STATE, EX REL. THOMAS J. O'CONNOR, APPELLANT, V. ANTON J. TUSA, ELECTION COMMISSIONER, APPELLEE.

FILED MARCH 2, 1936.   No. 29808.

*O'Sullivan & Southard, John P. Breen* and *W. C. Dorsey,* for appellant.

*James T. English* and *L. J. Te Poel, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

This is a suit to obtain the issuance of a writ of mandamus to compel Anton J. Tusa, election commissioner of

Douglas county, to accept relator's filing for the office of register of deeds of Douglas county. From an order denying the writ, relator appeals to this court.

The record discloses that on November 6, 1935, Thomas J. O'Connor, the relator herein, presented his application as a candidate for register of deeds of Douglas county to Anton J. Tusa, election commissioner of Douglas county, for the purpose of having his name placed on the ballot at the primary election to be held April 14, 1936. His filing was refused for the reason that the voters of Douglas county had, on November 6, 1934, adopted the county manager form of government provided for in sections 26-2001 to 26-2027, inclusive, Comp. St. Supp. 1935, and that, by reason thereof, there was not to be a register of deeds nominated at the primary election to be held on April 14, 1936.

In his petition for a writ of mandamus, relator contends that sections 26-2001 to 26-2027, Comp. St. Supp. 1935, are unconstitutional, void, and of no force and effect.

Prior to 1933, the statute provided for the election of a register of deeds in 1918, and every four years thereafter. Comp. St. 1929, sec. 32-209. In 1933, however, the statute was amended to provide for the election of a register of deeds in counties having a population of 150,000 or more in the year 1936, and every four years thereafter. Comp. St. Supp. 1933, sec. 32-209.

Relator contends that his right and authority to file for the office of register of deeds arises under and by virtue of the statute last cited, it having been adopted by the legislature and approved by the governor subsequent to the passage of the county manager act, and also subsequent to the adoption of the county manager act by the voters of Douglas county. Respondent contends that the county manager act, and the vote of the people of Douglas county in adopting it, suspended the election of a register of deeds in Douglas county in 1936, and until such time as the county managerial form of government shall have been legally abandoned, as provided by the act.

We conclude at the outset that the county manager act is cumulative in character and optional on the part of the voters of each county in the state. In other words, it purports to organize a new optional form of county government without in any way destroying or interfering with the former. Those counties which do not adopt the county manager form of government will continue to operate under the old law, as will those that may subsequently abandon the county manager plan. Certainly it cannot be said that, because the legislature saw fit to amend the old law at a date subsequent to the passage of the county manager act, it thereby repealed the county manager act. This is true even though Douglas county happens to be the only county falling within the class of cities specified in section 32-209, Comp. St. Supp. 1933, the amendatory act. It was clearly the intention of the legislature to provide two separate and distinct forms of county government, one of which was optional. Under this situation, the amendment of the act formulating one form could have no effect upon the operation of the other.

Relator contends that the act is broader than its title and is therefore void under the provision of section 14, art. III of the Constitution of Nebraska, which provides in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." The title to the act in question is as follows: "An act relating to county government and officers; to provide for the adoption of the managerial form of county government; and to provide penalties for the violation thereof." Laws 1933, ch. 35. It will be noted that this title provides for the adoption of *the managerial form* of county government without reference to any form or plan of county government that might be contained within the act itself. (Italics ours.) Without overstressing the meaning of the title unduly, one might well assume in reading it that the plan itself was not in the act and that the act provided for a form of managerial government to be derived from some other source. Respondent contends that the title is sufficient, and cites the case of *State v. Ure,*

91 Neb. 31, 135 N. W. 224, to sustain his contention. The title to the act involved in that case was as follows: "An act for the government of all cities having, according to the last preceding state or national census, five thousand or more population, and to enable such cities to adopt the provisions of this act called the 'Commission Plan of City Government.'" Laws 1911, ch. 24. We held in that case that the act was not broader than its title and we believe that the holding was correct. But, in that case the title to the act says, "and to enable such cities to adopt the provisions of *this* act *called* the 'Commission Plan of City Government.'" (Italics ours.) The reader of this title knows that the commission plan of city government mentioned is the plan contained in the act itself and this apprisal is such as to bring it within the requirements of the constitutional provision. This case does not, however, overcome the objection made to the title in the case at bar. The reader of the title is not apprised of the contents of the act sufficiently. The act contains more than the title infers and therefore falls within the constitutional prohibition contained in section 14, art. III of the Constitution.

Respondent also contends that certain existing offices of the county are abolished by the act and the duties to be performed in such offices are placed in the hands of the county manager. If the offices provided by previous statutes are not abolished by the act of the people of Douglas county in adopting the provisions of the county manager law under consideration in this case, then the further question arises as to whether such officers may be appointed by a county manager or selected in any way other than by election by the electors of Douglas county.

The title to the act, which we have hereinbefore quoted, makes no reference to an intent on the part of the legislature to abolish certain offices. We are not saying that such a statement in the title is necessary under the provisions of section 14, art. III of the Constitution, but it is a matter to be considered in determining the meaning of the statute under consideration. Neither is there an express statement

in the act abolishing any offices upon the adoption of the act by the electors of the county.

With reference to the exercise of governmental powers under the county manager act, and the methods to be followed in placing it in operation, the following sections of the law are pertinent:

"The powers of a county which adopts the county manager form of government, as a body politic and corporate, shall be vested in a board of county commissioners or county supervisors, which shall consist of five persons, who shall receive the sum of five dollars ($5.00) per day while said commissioners or supervisors are in session, and shall be exercised in the manner set forth in this act." Comp. St. Supp. 1935, sec. 26-2003.

"(a) The board of county commissioners or supervisors, hereinafter called the 'county board,' shall be the policy-determining body of the county, and except as otherwise provided by law, shall be vested with all the powers of the county, as provided by law, including power to levy taxes and to appropriate funds. * * * (d) The county board shall have power to put all officers of the county on a salary basis, and to require all fees to be accounted for and paid into the county treasury. (e) Whenever in any county, adopting this act, it is not clear what officer provided for thereby or under the authority thereof should exercise any power or perform any duty conferred upon or required of the county, or any officer thereof, by general law, then any such power shall be exercised or duty performed by that officer of the county designated by ordinance or resolution of the county board." Comp. St. Supp. 1935, sec. 26-2005.

"(a) The county board shall appoint a county manager and fix his compensation. He shall be the administrative head of the county government, and shall devote his full time to this work. He shall be appointed with regard to merit only, and he need not be a resident of the county at the time of his appointment. No members of the county board shall, during the time for which elected, be chosen manager, nor shall the managerial powers be given to a

person who at the same time is filling an elective office. (b) The manager shall not be appointed for a definite tenure, but shall be removable at the pleasure of the county board." Comp. St. Supp. 1935, sec. 26-2007.

"The manager shall be responsible to the county board for the proper administration of all the affairs of the county which the board has authority to control. To that end he shall appoint all officers and employees in the administrative service of the county, except as otherwise provided in this act, and except as he may authorize the head of a department or office responsible to him to appoint subordinates in such department or office." Comp. St. Supp. 1935, sec. 26-2008.

"(a) As the administrative head of the county government for the county board, the manager shall supervise the collection of all revenues, guard adequately all expenditures, secure proper accounting for all funds, look after the physical property of the county, exercise general supervision over all county institutions and agencies, and, with the approval of the county board, coordinate the various activities of the county and unify the management of its affairs. (b) He shall execute and enforce all resolutions and orders of the county board, and see that all laws of the state required to be enforced through the county board or other county officers subject to its control are faithfully executed." Comp. St. Supp. 1935, sec. 26-2012.

' "(a) The county manager shall be responsible to the county board for the administration of the following activities: (1) The assessment of property for taxation and the preparation of the tax roll; (2) the collection of taxes, license fees, and other revenues of the county and its subdivisions; (3) the custody and accounting of all public funds belonging to or handled by the county; (4) the purchase of all supplies for the county except those specifically excepted in this act; (5) the care of all county buildings; (6) the care and custody of all the personal property of the county; (7) the recording of deeds, mortgages and other instruments, and the entry and preservation of such other

public records as the law requires; (8) the construction and maintenance of county highways and bridges; (9) the employment of prisoners of the county or of any of the governmental subdivisions in the county jail; all other powers, duties and responsibilities of the county sheriff shall remain with and be vested in the elected county sheriff as by law provided; (10) the care of the poor, the operation of county charitable and correctional institutions, and the other welfare activities; (11) public health work and the operation of the county hospitals; (12) any or all matters of property and business in connection with the administration of schools and other governmental units within the county which shall be delegated to him by these units with the approval of the county board; (13) such other activities of the county as are not specifically assigned to some other officer or agency by this act or by the laws of the state subsequently enacted. (b) These activities shall be distributed among the departments hereinafter described. There shall be a department of finance, a department of public works, and a department of public welfare; and the county board may, upon recommendation of the county manager, establish additional departments. Any activity which is unassigned by this act shall be assigned by the county board to an appropriate department, and any activity so assigned may, upon the recommendation of the county manager, be transferred by the board to another department. (c) The manager shall appoint a director for each department provided for or authorized by this section, and he may, with the consent of the county board, act as the director of one department himself or appoint one director for two or more departments. The subordinate officers and employees of each department shall be appointed or employed by the manager, unless he chooses to delegate this power in particular instances to a subordinate officer. The powers, duties and responsibilities of the clerk of the district court shall remain with and be vested in the elected clerk of the district court as by law provided." Comp. St. Supp. 1935, sec. 26-2013.

It will be observed that subdivision (7) of section 26-2013 contains the provision providing that the county manager should take over duties pertaining to the office of register of deeds. After the amendment of this section by the legislature in 1935, in which certain former county offices were excluded from the provisions of the county manager act, the register of deeds was still one of the offices falling under the provisions of the act. Laws 1935, ch. 51. While the provisions of subdivision (7) of section 26-2013 may have transferred the duties of the office of register of deeds to the county manager, yet it fell far short of abolishing the office of register of deeds. Such provision is as follows: "The county manager shall be responsible to the county board for the administration of the following activities: * * * (7) the recording of deeds, mortgages and other instruments, and the entry and preservation of such other public records as the law requires."

So far as the statute under consideration is concerned, the office of register of deeds remains in existence after the adoption of the county manager act, unless it can be said to be abolished by implication.

An office has been defined as follows: "An office is a public station or employment, conferred by the appointment of government; and embraces the ideas of tenure, duration, emolument, and duties." *United States v. Hartwell,* 6 Wall. (U. S.) 385, 18 L. Ed. 830.

"The words 'office' and 'officer' are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used." *State v. Kiichli,* 53 Minn. 147, 54 N. W. 1069.

It may be said that the almost universal rule is that, in order to indicate office, the duties must partake in some degree of the sovereign powers of the state. The rule is laid down in 22 R. C. L. 374, sec. 4, as follows: "One of the most important criteria of a public office is that the incum-

bent is vested with some of the functions pertinent to sovereignty, for it has been frequently decided that in order to be an office the position must be one to which a portion of the sovereignty of the state, either legislative, executive, or judicial, attaches for the time being." In this connection the supreme court of Ohio said: "The outstanding characteristic common to all definitions of an officer is the possession by him of some sovereign power." *Industrial Commission v. Rogers,* 122 Ohio St. 134, 171 N. E. 35. To like effect is the holding of this court in *Home Savings & Loan Ass'n v. Carrico,* 123 Neb. 25, 241 N. W. 763, wherein we said: "A public officer is an incumbent of a public office, which is the right, duty and authority conferred by law, by which for a given period, an individual is invested with some portion of the sovereign functions of government for the benefit of the public."

The Constitution of Nebraska provides: "The legislature shall provide by law for the election of such county and township officers as may be necessary." Const. art. IX, sec. 4.

There can be no question that, prior to the adoption of the county manager act, the register of deeds of Douglas county was an officer of the county. It is clear that provision was not made for the abolition of that office in the county manager act. Can its abolition be implied? We think not. One of the duties of the county manager under this act is to appoint all *officers,* agents and employees. (Italics ours.) In view of the use of the words "agents" and "employees," it clearly was the intent of the legislature, as determined from the act itself, that the word "officer" as used in the act before us should have the same meaning that it had in preexisting statutes and in the Constitution. This being true, the county manager act provides for the appointment of officers by the county manager contrary to section 4, art. IX of the Constitution.

The question immediately arises as to whether the county manager, under the act as drawn, is a public officer. In the first place, he is to appoint all officers, agents and employees.

The appointment of officers clearly is not within the powers of a strictly administrative head when we consider the constitutional inhibition hereinbefore discussed. The act provides that he, himself, may hold one or more of the designated offices. As the act is drawn he must be an officer to hold such a position. This necessarily would constitute him an officer within the purview of the Constitution. It might be said that the county manager might not attempt to hold the dual position of county manager and county officer. This cannot change the rule. It is not what is or may be done, but rather what can be done under a legislative act that determines its constitutionality. We are constrained to hold that, under the legislative enactment before us, the county manager is an officer of the county within the purview of section 4, art. IX of the Constitution.

Other points are made in the briefs questioning the constitutionality of this act which we will not discuss in view of the conclusions already reached. The contention is made that, even if the county manager act did not abolish the established county offices upon its adoption by the electors of Douglas county, the act as a whole would not be void and that the law could successfully be carried out with the elective county officers in office. It is clearly not the province of this court to substitute its judgment for that of the legislature or the electors of Douglas county on questions of political policy. However, it appears to us that, if the office of register of deeds was not abolished by the county manager act, as well as other offices mentioned therein, and that the Constitution prohibits the appointment of a county manager for the reason that he is constituted a public officer by the act, the purpose of the legislature in enacting the statute has been defeated. This court has held: "Where valid and invalid parts of a legislative act are so intermingled that they cannot be separated in such a manner as to leave an enforceable statute expressing the legislative will, no part of the enactment can be enforced." *State v. Junkin,* 85 Neb. 1, 122 N. W. 473. This rule clearly applies to the case at bar. In addition thereto, the act being

broader than its title, its subject is not clearly expressed in the title and the whole act must fail. We therefore hold that sections 26-2001 to 26-2027, Comp. St. Supp. 1935, are unconstitutional and void in the respects hereinbefore noted in this opinion.

The trial court was in error in denying the writ of mandamus as prayed. The writ ought to be and is hereby allowed.

WRIT ALLOWED.

GOSS, C. J., dissenting.

Without going much into details, I respectfully dissent from the opinion of the majority. I am authorized to say that Judge Paine joins in this dissent.

We do not think the title of the county manager act violates that part of section 14, art. III of the Constitution, providing that the subject of the act "shall be clearly expressed in the title." On this precise point this court, in an opinion written by Judge Letton, said: "The provisions of section 11 (now section 14), art. III of the Constitution, * * * are intended to prevent surreptitious legislation. The court will not be warranted in holding that an act of the legislature is void because more appropriate or a better arrangement of the language in the title might have been adopted, if the general purpose of the act is expressed and the matter contained in the body of the act is germane thereto." *State v. Ure,* 91 Neb. 31, 135 N. W. 224.

The title of the act under consideration is "An act relating to county government and officers; to provide for the adoption of the managerial form of county government; and to provide penalties for the violation thereof." Laws 1933, ch. 35. The body of the act answers every test that makes it "germane." If it actually provides for the adoption of a new form of county government, that answers the call of the title and the title plainly gave notice of whatever was "germane" in the act.

We do not claim that the act abolished the office of register of deeds, but that it suspended the election by the people of the "officer" who held that position, and, during

the period until the election of such officer should be restored by vote of the people, put that office, with all of the statutes affecting it, to be operated under an elective board of county commissioners, acting through their appointed county manager. We say, therefore, the county manager will not be a public officer. He is merely an agent of the county board with broad powers, whose agency, however, is terminable at the will of the board.