REQUESTED BY: Senator Joyce Hillman Nebraska State Legislature
You have requested an opinion from this office as to whether passage of a constitutional amendment is necessary to alter the state's current form of county governance by instituting an optional "county administrator" system of government. This inquiry is directed specifically to your legislation, LR 46CA, which would place upon the November, 1996, general election ballot a proposal to amend Article IX, § 4 of the Nebraska Constitution.
The Constitution Proposed Amendment
Pursuant to the Nebraska Constitution, "[t]he Legislature shall provide by law for the election of such county and township officers as may be necessary. . . ." Neb. Const. art. IX, §4 (1989). Your legislation, if enacted and approved by a majority of voters, would retain the current provisions of Article IX, § 4, and add the following new text:
 The Legislature may provide by law for a county administrator form of government in which county officers may be appointed, but such form shall be optional with each county and shall occur in any county only upon adoption by a majority vote of the registered voters of the county voting on the question.
LR 46CA (as amended by AM0016). During recent debate on your legislation, a question arose as to whether, under the current language of Article IX, § 4, the Legislature is already vested with authority to enact legislation implementing your proposal. Debate on that issue prompted your request for this opinion.
Standard of Review
Our analysis of Article IX, § 4 is governed by several canons of constitutional construction which have been adopted by the Nebraska Supreme Court. First, we are bound by the cardinal rule that the state Constitution must be applied and enforced as it is written. State ex rel. Spire v. Conway,238 Neb. 766, 472 N.W.2d 403 (1991). Next, the provisions of the Constitution must be read as a whole. Jaksha v. State,222 Neb. 690, 385 N.W.2d 922 (1986). "Moreover, constitutional provisions are not open to construction as a matter of course; construction of a constitutional provision is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary."238 Neb. at 774-775, 472 N.W.2d at 408-409; In re ApplicationA-16642, 236 Neb. 671, 463 N.W.2d 591 (1990).
If a provision must be construed because its meaning is not clear, then "its words are to be interpreted in their most natural and obvious sense, although they should receive a more liberal construction than statutes. . . ." 238 Neb. at 775,472 N.W.2d at 409; State ex rel. Spire v. Public Emp. Ret.Bd., 226 Neb. 176, 410 N.W.2d 463 (1987).
 The intent and understanding of [the] framers [of a constitutional amendment] and the people who adopted it as expressed in the instrument is the main inquiry in construing it. . . . It is permissible to consider the facts of history in determining the meaning of the language of the Constitution. . . . It is also appropriate and helpful to consider, in connection with the historical background, the evil and mischief attempted to be remedied, the objects sought to be accomplished, and the scope of the remedy its terms imply.
State ex rel. Spire v. Beermann, 235 Neb. 384, 389-90,455 N.W.2d 749, 752 (1990) (quoting State ex rel. StateRailway Commission v. Ramsey, 151 Neb. 333, 340-41,37 N.W.2d 502, 507 (1949)) (citations omitted); see alsoState ex rel. Douglas v. Beermann, 216 Neb. 849,347 N.W.2d 297 (1984); Dwyer v. Omaha-Douglas Public BuildingCommission, 188 Neb. 30, 195 N.W.2d 236 (1972).
Finally, because the Nebraska Constitution "is not a grant but, rather, a restriction on legislative power, . . . the Legislature is free to act on any subject not inhibited by the Constitution." State ex rel. Stenberg v. Douglas RacingCorp., 246 Neb. 901, 905, 524 N.W.2d 61, 64 (1994);State ex rel. Creighton Univ. v. Smith, 217 Neb. 682,353 N.W.2d 267 (1984); Cf. Lenstrom v. Thone,209 Neb. 783, 789, 311 N.W.2d 884, 888 (1981). In so acting, however, the court has established that "[t]he people of the state, by adopting a Constitution, have put it beyond the power of the [L]egislature to pass laws in violation thereof."State ex rel. Randall v. Hall, 125 Neb. 236, 243,249 N.W. 756, 759 (1933); see also State ex rel. Stenberg v.Murphy, 247 Neb. 358, 527 N.W.2d 185 (1995) (holding that "constitutional language controls legislative language, not the other way around."); State ex rel. Caldwell v.Peterson, 153 Neb. 402, 45 N.W.2d 122 (1950) (holding that the Legislature cannot lawfully act beyond limitations of the Constitution).
Discussion
Pursuant to these guidelines, we now address your inquiry. Originally, the state Constitution contained no provisions pertaining to counties. However, "[c]ounties were apparently already in existence pursuant to territorial law. In 1873, the Legislature confirmed the boundaries of [those] and created others. It likewise made provision for the government of counties and made provision defining the powers and duties of counties and their officers." Dwyer v. Omaha-DouglasPublic Bldg. Cmms'n, 188 Neb. 30, 37, 195 N.W.2d 236, 241
(1972); see also State ex rel. Harte v. Moorhead,99 Neb. 527, 156 N.W. 1067 (1916). Limitations on the Legislature's power to create new counties or to change existing county boundaries were incorporated into the Constitution in 1875.Id., 195 N.W. at 242; see also Neb. Const. art. X, § 1 — § 3 (1875). The provision requiring the Legislature to provide by law for the election of county officers was also incorporated into the Constitution in 1875.See Neb. Const. art. X, § 4 (1875). That provision has remained unaltered since its inception.[1] Based upon inclusion of these provisions in the state's Constitution, the Nebraska Supreme Court has found that "counties as subdivisions of government did and do occupy a unique place in the eyes of the drafters [of the Constitution] and the people, the ratifiers, of the Constitution." 188 Neb. at 43-44, 195 N.W.2d at 245.
The supreme court has long held that, pursuant to the Article IX, § 4 provision, "[t]he number and character of county offices that may be created rests in the discretion of the [Legislature]." Dinsmore v. State, 61 Neb. 418, 429,85 N.W. 445, 448 (1901) (holding, in light of a criminal defendant's challenge to his first-degree murder conviction, that Neb. Const. art. X, § 4 (1875) vested the Legislature with the power to establish the office of county attorney); Cf.Fitzgerald v. Kuppinger, 163 Neb. 286, 79 N.W.2d 547 (1956);Conroy v. Hallowell, 94 Neb. 794, 144 N.W. 895 (1913). Thus, the Legislature has enacted a comprehensive set of statutes which create various county officers and enumerate their powers and duties.[2] Your inquiry raises the issue of whether, once created, those county officers may be appointed by a county administrator or county board, rather than being elected by a vote of the people.
The issue has been addressed by the supreme court inState ex rel. O'Connor v. Tusa, 130 Neb. 528,265 N.W. 524 (1936). The controversy in that case centered on an individual's attempt to file as a candidate for the office of Douglas County Register of Deeds for the 1936 primary election. The county election commissioner refused to accept the filing due to the fact that, two years earlier, a majority of Douglas County voters had adopted a county manager form of government which had been provided for by the Legislature. Id. at 529,265 N.W. at 525. The election commissioner asserted that adoption of the county manager form of government "suspended the election of a register of deeds in Douglas County . . . until such time as the county managerial form of government [was] legally abandoned . . . .," id., because the duties of that and other county offices would be performed by the county manager or his appointees.
Similar to the proposal set forth in LR 46CA, the county manager statutes examined in Tusa "purport[ed] to organize a new optional form of county government without in any way destroying or interfering with the former [law]. Those counties which [did] not adopt the county manager form of government [would] continue to operate under the old law, as [would] those that . . . subsequently abandon[ed] the county manager plan." Id. at 530, 265 N.W. at 525-526. Thus, the Legislature's enactment had provided for two separate and distinct forms of county government. Id.;see 1933 Neb. Laws, ch. 35, LB156, § 1 — § 27 (codified at Neb. Rev. Stat. § 26-2001 — § 26-2018 (Supp. 1933)). The court examined provisions of the county manager statutes at length and found that, while the statute may have transferred the duties of the office of register of deeds to the county manager, the statutes had not expressly abolished the office of register of deeds.Id. at 535, 265 N.W. at 526.
Next, the court examined whether, by adoption of a county manager form of government, the office of register of deeds had been implicitly abolished. In order to make that determination, the court analyzed the meaning of the term "office." The court determined that
 [t]he words "office" and "officer" are terms of vague and variable impact, the meaning of which necessarily varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used.
. . . .
 One of the most important criteria of a public office is that the incumbent is vested with some of the functions pertinent to sovereignty, for it has been frequently decided that in order to be an office the position must be one to which a portion of the sovereignty of the state, either legislative, executive, or judicial, attaches for the time being.
Id. at 535-536, 265 N.S. at 528 (citations omitted);see also State ex rel. Spire v. Conway, 238 Neb. 766,771-72, 472 N.W.2d 403, 407 (1991) (affirming the Tusa
analysis and defining a public office as "a governmental position, the duties of which invest the incumbent with some aspect of the sovereign power").
Based upon this broad definition, the court held that the register of deeds was a public, county "office," the abolition of which had been neither expressly nor implicitly provided for by the Legislature's enactment of statutes providing for a county manager form of government. The court further determined that, as outlined in the legislative enactment, the county manager position also constituted a county officer. 130 Neb. at 536-537,265 N.W. at 529. Since those officers, under the county manager statutes, were appointed to office, rather than elected, the supreme court declared the legislative enactment to be an unconstitutional violation of Article IX, § 4.Id. at 536, 265 N.W.2d at 528.
The court's Tusa decision is consistent with its ruling in an earlier case which involved a challenge to statutes governing the establishment of county commissioner districts in Douglas County. In State ex rel. Harte v. Moorhead,99 Neb. 527, 156 N.W. 1067 (1916), a candidate for one of the county board seats instituted the action to contest the validity of the apportionment of the district which had been established by the Legislature. Resolution of the dispute centered upon the court's construction of several provisions of the Constitution. The court ultimately concluded that the districting plan was unconstitutional. Id. at 546-547, 156 N.W. at 1071. The court's reasoning included a finding that
 [c]ounty governments are local in nature, and the Constitution protects them in their right of local self-government. . . . The Constitution makers had something definite in mind when they provided that county officers should be elected.
Id. at 534, 156 N.W. at 1069 (emphasis supplied).
Based upon the supreme court's analysis of Article IX, § 4 and of the Legislature's 1933 attempt to institute an optional "county manager" system of county government, we conclude that a similar attempt to implement your proposal, without first amending the text of Article IX, § 4, would be deemed unconstitutional. While the Legislature is vested with broad authority to determine which county offices will exist, once those offices have been established, the people have retained the right to elect the individuals who will occupy those offices.
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg
Attorney General
[1] Following the 1968 general election, text was added to Article IX, § 4 which granted authority for the consolidation of county offices. See 1967 Neb. Laws, LB 85. That amendment did not affect the preexisting language pertaining to county officers.
[2] See, e.g., Neb. Rev. Stat. §23-105 (county board); Neb. Rev. Stat. § 23-1201 (county attorney); Neb. Rev. Stat. § 23-1301 (county clerk); Neb. Rev. Stat. § 23-1501 (register of deeds); Neb. Rev. Stat. § 23-1601 (county treasurer); Neb. Rev. Stat. § 23-1701
(county sheriff); Neb. Rev. Stat. § 23-1901 (county surveyor/engineer); Neb. Rev. Stat. § 23-3201 (county assessor); Neb. Rev. Stat. § 23-3301 (county superintendent); Neb. Rev. Stat. § 23-3401 (public defender).