Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/12/2021 08:09 AM CST

State of Nebraska ex rel. Douglas J. Peterson,
Attorney General of the State of Nebraska,
appellant, v. David J. Shively, in his official
capacity as Lancaster County Election
Commissioner, et al., appellees, and Pete
Ricketts, in his official capacity as
Governor of the State of Nebraska,
and Robert B. Evnen, in his official
capacity as Secretary of State
of the State of Nebraska,
intervenors-appellees.

___ N.W.2d ___

Filed August 20, 2021.    No. S-21-066.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Constitutional Law: Statutes: Appeal and Error.** The constitutionality of a statute is a question of law, and the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court.

4. **Constitutional Law: Appeal and Error.** Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court.

5. **Judgments: Appeal and Error.** An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.

6. **Constitutional Law: Statutes: Presumptions.** A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.

7. **Constitutional Law: Statutes: Proof.** The party challenging the constitutionality of a statute bears the burden to clearly establish the unconstitutionality of a statutory provision.

8. **Constitutional Law: Statutes.** It is not the province of a court to annul a legislative act unless it clearly contravenes the constitution and no other resort remains.

9. **Judgments.** Although an Attorney General's opinion is entitled to substantial weight and is to be respectfully considered, it nonetheless has no controlling authority on the state of the law discussed in it and, standing alone, is not to be regarded as legal precedent or authority of such character as is a judicial decision.

10. **Constitutional Law: Intent.** The words in a constitutional provision must be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests that they are used in a technical sense.

11. ____: ____. If the meaning of a constitutional provision is clear, the court will give to it the meaning that obviously would be accepted and understood by laypersons.

12. **Constitutional Law: Statutes.** Constitutional provisions are not subject to strict construction and receive a broader and more liberal construction than do statutes.

13. **Constitutional Law: Courts: Intent.** It is the duty of courts to ascertain and to carry into effect the intent and purpose of the framers of the constitution or of an amendment thereto.

14. **Constitutional Law: Legislature: Initiative and Referendum.** The Nebraska Constitution vests complete legislative authority of the state in the Legislature, subject only to the rights of initiative and referendum reserved by the constitution to the people and to any specific restrictions on the legislative authority found in the constitution itself.

15. **Constitutional Law: Legislature.** The Nebraska Constitution is not a grant, but, rather, a restriction on legislative power, and the Legislature may legislate on any subject not inhibited by the constitution.

16. **Constitutional Law: Courts.** Courts can enforce only those limitations which the Nebraska Constitution imposes.

17. **Statutes: Words and Phrases.** The word "necessary," especially when used in a statute, may mean anything from "indispensable" to "convenient."

18. **Legislature: Public Officers and Employees.** The number and character of county offices that may be created rests in the discretion of the Legislature.

19. \_\_\_\_: \_\_\_\_. The Legislature enjoys broad discretion in creating and defining county offices, and deciding who is a county officer is a matter generally within the Legislature's authority.

20. \_\_\_\_: \_\_\_\_. The Legislature possesses the discretionary authority to create and define county offices, a power which includes the ability to define or identify who is a county officer.

21. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

22. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.

23. **Statutes: Intent.** When interpretation of a statute is necessary, a court will look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served.

24. \_\_\_\_: \_\_\_\_. A court must reasonably or liberally construe a statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.

25. **Constitutional Law: Statutes: Legislature.** Legislative construction of a statutory or constitutional provision, although not conclusive on the courts, when deliberately made is entitled to great weight.

26. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute.

27. **Legislature: Public Officers and Employees: Intent.** The Legislature did not intend for election commissioners or chief deputies to be classified as county officers.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Douglas J. Peterson, Attorney General, James A. Campbell, Solicitor General, L. Jay Bartel, and Lynn A. Melson, for appellant.

Marnie A. Jensen and David A. Lopez, of Husch Blackwell, L.L.P., for appellees and intervenors-appellees.

Beth Bazyn Ferrell for amicus curiae Nebraska Association of County Officials.

Andre R. Barry and John F. Zimmer, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for amicus curiae Civic Nebraska.

Joshua R. Woolf, Deputy Douglas County Attorney, Eric W. Synowicki, Deputy Lancaster County Attorney, and Andrea V. Gosnold-Parker, Deputy Sarpy County Attorney, for amici curiae Douglas, Lancaster, and Sarpy Counties.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ., and Arterburn, Judge.

Funke, J.

The Attorney General of the State of Nebraska appeals the determination of the district court for Lancaster County that Nebraska statutes authorizing the Governor to appoint election commissioners in Lancaster, Douglas, and Sarpy Counties are constitutional. The Attorney General argues that election commissioners and their chief deputies are county officers and that article IX, § 4, of the Nebraska Constitution requires county officers to be elected. In affirming the decision of the district court, we conclude that article IX, § 4, respects the Legislature's broad discretion and legislative authority to create and define county offices and officers.

## BACKGROUND

### Honest Election Law of 1913

The Nebraska Legislature created the office of the election commissioner in the Honest Election Law of 1913, now known as the Election Act.[1] Under the Honest Election Law of 1913, the primary job of the election commissioner was to enforce Nebraska's election laws.[2] The Honest Election Law of

---

[1] See Neb. Rev. Stat. §§ 32-101 to 32-1551 (Reissue 2016 & Cum. Supp. 2020).

[2] Neb. Rev. Stat. §§ 2314 and 2315 (1914).

1913 empowered the Governor to appoint the election commissioner in certain counties, based on population, and empowered the appointed election commissioner to appoint a chief deputy election commissioner of the opposing political party.[3] Today, the Election Act requires that the Governor appoint an election commissioner for counties with a population of over 100,000 inhabitants.[4] As a result, in Lancaster, Douglas, and Sarpy Counties, the Legislature has provided that election commissioners are to be appointed.

### ATTORNEY GENERAL'S OPINION

On September 24, 2019, at the request of a Nebraska state senator, the Attorney General issued an opinion answering two questions: (1) whether election commissioners are county officers within the meaning of article IX, § 4, of the Nebraska Constitution and (2) if election commissioners are county officers, whether the appointment of election commissioners and the chief deputies violates that provision of the Nebraska Constitution.

In answering the first question, the Attorney General quoted language from *State, ex rel. O'Connor, v. Tusa*,[5] where we stated that "[i]t may be said that the almost universal rule is that, in order to indicate office, the duties must partake in some degree of the sovereign powers of the state." The Attorney General noted that in discussing a public office, we stated in *Tusa* that "'[a]n office is a public station or employment, conferred by the appointment of government . . . .'"[6] We further stated that it "'embraces the ideas of tenure, duration, emolument, and duties.'"[7] The Attorney General found

---

[3] See § 32-209.

[4] § 32-207.

[5] *State, ex rel. O'Connor, v. Tusa*, 130 Neb. 528, 535, 265 N.W. 524, 528 (1936).

[6] *Id.*

[7] *Id.*

that election commissioners and chief deputies are county officers, emphasizing that their authority derives from statute, they are appointed for a fixed term, they are required to take an oath and furnish a bond before taking office, and they are responsible for the enforcement of the Election Act as it relates to his or her office. The Attorney General explained that its findings were consistent with this court's opinion in *State, ex rel. Meissner, v. McHugh*,[8] where we identified the respondents in the case, the Douglas County election commissioner and his chief deputy, as public officers.

Regarding the second question, the Attorney General found that the appointment statutes were unconstitutional pursuant to *Tusa*. In *Tusa*, this court held that a county manager was a county officer as the term is used in article IX, § 4, and that as a result, the Nebraska statute authorizing the appointment of a county manager was unconstitutional. The Attorney General also relied upon our decision in *State, ex rel. Harte, v. Moorhead*,[9] where this court noted that "[t]he Constitution makers had something definite in mind when they provided that county officers should be elected."

Based on these authorities, and its conclusion that election commissioners and chief deputies are county officers, the Attorney General opined that Nebraska's statutes requiring or authorizing the appointment of an election commissioner or chief deputy are constitutionally suspect and would be found unconstitutional by a court.

### COURT PROCEEDINGS

On September 30, 2019, Pete Ricketts, Governor of the State of Nebraska, responded to the Attorney General's opinion in a letter stating that he would refuse to exercise his statutory appointment authority, and therefore would decline to

---

[8] *State, ex rel. Meissner, v. McHugh*, 120 Neb. 356, 233 N.W. 1 (1930).

[9] *State, ex rel. Harte, v. Moorhead*, 99 Neb. 527, 534, 156 N.W. 1067, 1069 (1916).

appoint a Douglas County election commissioner, necessitating litigation under Neb. Rev. Stat. § 84-215 (Reissue 2014). Section 84-215 provides that when the Attorney General opines that an act of the Legislature is unconstitutional, and a state officer charged with the duty of implementing the act refuses to implement the act in reliance on that opinion, the Attorney General must file an action to determine the validity of the act. Pursuant to § 84-215, the Attorney General sought leave to file an original action in the Nebraska Supreme Court against the Secretary of State of the State of Nebraska. Leave to commence an original action was denied after the parties were unable to reach a complete stipulation of the facts.

Thereafter, the Attorney General filed a lawsuit in district court against the election commissioners and the chief deputies of Lancaster, Douglas, and Sarpy Counties (collectively Respondents). Governor Ricketts and Secretary of State Robert B. Evnen (collectively Intervenors), in their official capacities, intervened on the side of Respondents. In a motion for summary judgment, the Attorney General asked the court to declare unconstitutional, in violation of article IX, § 4, §§ 32-207 and 32-209, and any related provisions of the Election Act. The Attorney General also requested the court to declare any statutory appointments void. In response, Respondents and Intervenors moved for summary judgment, asserting that election commissioners and their chief deputies are not county officers and that article IX, § 4, does not deprive the Legislature of its authority to provide for the appointment of election commissioners in counties with a certain population.

The court entered judgment in favor of Respondents and Intervenors. The court concluded that election commissioners are not "county officers" under article IX, § 4. The court cited *Tusa* and acknowledged that in order to be an article IX, § 4, "officer," the duties of the post must "partake in some degree of the sovereign powers of the state."[10] The court was not

---

[10] *Tusa, supra* note 5, 130 Neb. at 535, 265 N.W. at 528.

persuaded by the Attorney General's argument that "officers" under article IX, § 4, should generally take an oath or give a bond. The court explained that under this interpretation, the Legislature could avoid the election requirement by amending the statutes to no longer require an oath or a bond for a county job. The court further explained that an oath does not distinguish county officers from mere county employees, because in Nebraska, all public employees are required by statute to swear an oath. Additionally, the court noted that any person who is entrusted with county funds is required to give a bond or an equivalent insurance policy.

The court found that the Attorney General's position swept too broadly and that courts must look to an "interpretation of the constitution [that] will carry out the framers' intent and purpose." The court determined that election commissioners have been appointed by the Governor in Nebraska for more than 100 years and that, if anything, election commissioners exercised even broader powers when the office was created a century ago. Thus, the court concluded that the statutes allowing the Governor to appoint election commissioners in the State's most populous counties do not violate the Nebraska Constitution. Instead, the court explained, the appointment statutes reflect a settled understanding of the Nebraska Constitution for over a century.

After judgment was entered, upon an unopposed motion, the court amended the judgment, clarifying that all claims were resolved. Additionally, the court entered a nunc pro tunc order clarifying its evidentiary rulings and stating that exhibits 1 through 3 and 7 through 18 were received into evidence during the proceedings. The Attorney General appeals.

Three amicus briefs were filed in this appeal. The Nebraska Association of County Officials filed an amicus brief in support of Respondents. Lancaster, Douglas, and Sarpy Counties also filed a joint amicus brief in support of Respondents. Additionally, Civic Nebraska filed an amicus brief in support of the Attorney General.

## ASSIGNMENTS OF ERROR

The Attorney General assigns, summarized and restated, that the district court erred in (1) concluding that the election commissioners are not county officers under article IX, § 4, and (2) failing to declare Nebraska's appointment statutes unconstitutional and void any appointments made under those statutes.

## STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[11] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[12]

[3,4] The constitutionality of a statute is a question of law, and this court is obligated to reach a conclusion independent of the decision reached by the trial court.[13] Constitutional interpretation is a question of law on which this court is obligated to reach a conclusion independent of the decision by the trial court.[14]

[5] An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.[15]

## ANALYSIS

[6-8] We begin by noting that a statute is presumed to be constitutional, and all reasonable doubts are resolved in

---

[11] *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019).

[12] *Id.*

[13] *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006).

[14] *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000).

[15] *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

favor of its constitutionality.[16] The party challenging the constitutionality of a statute bears the burden to clearly establish the unconstitutionality of a statutory provision.[17] It is not the province of a court to annul a legislative act unless it clearly contravenes the constitution and no other resort remains.[18]

[9] In the present matter, the district court granted Respondents' motion for summary judgment and determined that election commissioners are not "county officers" under article IX, § 4. The Attorney General disagrees and argues election commissioners and chief deputies fall under the definition of the word "officer" and serve a county, thus making them "county officers." The Attorney General further contends that because article IX, § 4, requires county officers to be elected, the statutes authorizing the appointment of election commissioners and chief deputy election commissioners are unconstitutional. Although an Attorney General's opinion is entitled to substantial weight and is to be respectfully considered, it nonetheless has no controlling authority on the state of the law discussed in it and, standing alone, is not to be regarded as legal precedent or authority of such character as is a judicial decision.[19]

[10-13] The words in a constitutional provision must be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests that they are used in a technical sense.[20] If the meaning of a constitutional provision is clear, the court will give to it the meaning that obviously would be accepted and understood by laypersons.[21] Constitutional provisions are not subject to strict construction and receive a broader and more liberal

---

[16] *State v. McCumber*, 295 Neb. 941, 893 N.W.2d 411 (2017).

[17] *Pony Lake Sch. Dist., supra* note 13.

[18] *Id.*

[19] *State v. Coffman*, 213 Neb. 560, 330 N.W.2d 727 (1983).

[20] *State ex rel. Johnson v. Gale*, 273 Neb. 889, 734 N.W.2d 290 (2007).

[21] *Id.*

construction than do statutes.[22] It is the duty of courts to ascertain and to carry into effect the intent and purpose of the framers of the constitution or of an amendment thereto.[23]

Upon this court's review of the record, we conclude that under the plain text of article IX, § 4, the Legislature has broad discretion and authority in creating and defining county offices and officers. While this discretion is not wholly unfettered, the statutes challenged here lie well within constitutional bounds.

## Legislative Authority

[14-16] Article III, § 1, of the Nebraska Constitution vests complete legislative authority of the state in the Legislature, subject only to the rights of initiative and referendum reserved by the constitution to the people and to any specific restrictions on the legislative authority found in the constitution itself. In other words, the Legislature has plenary legislative authority limited only by the state and federal Constitutions.[24] The Nebraska Constitution is not a grant, but, rather, a restriction on legislative power, and the Legislature may legislate on any subject not inhibited by the constitution.[25] Consequently, courts can enforce only those limitations which the Nebraska Constitution imposes.[26]

[17] Article IX, § 4, states, in pertinent part, "The Legislature shall provide by law for the election of such county and township officers as may be necessary . . . ." Although we have not had the opportunity to define the meaning of § 4's phrase "as may be necessary," we have explained that the word "necessary," especially when used in a statute, may mean anything

---

[22] *Id.*

[23] *Id.*

[24] *Dwyer v. Omaha-Douglas Public Building Commission*, 188 Neb. 30, 195 N.W.2d 236 (1972), citing *Swanson v. State*, 132 Neb. 82, 271 N.W. 264 (1937).

[25] *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981).

[26] *Id.*

from "indispensable" to "convenient."[27] The U.S. Supreme Court, in *Maggio v. Zeitz*,[28] used the phrase "'as may be necessary'" and the phrase "wide discretion[]" when discussing enforcement under the federal Bankruptcy Act; in doing so, the Court explained that a bankruptcy court is given a "wide discretionary jurisdiction to accomplish the ends of the Act," or, in the words of the statutes, to "'make such orders, issue such process, and enter such judgments . . . as may be necessary for the enforcement of the provisions of this title.'" This nexus between the phrase "as may be necessary" and discretionary authority is confirmed by similar language in our precedent of *Dinsmore v. State*.[29]

[18,19] In *Dinsmore*, the defendant was convicted of first degree murder and claimed that there was no warrant in the Nebraska Constitution for electing county attorneys, so that, therefore, his conviction, which was secured by a county attorney, was void.[30] This court disagreed and acknowledged that the office of the county attorney was created by legislative enactment, not by the constitution.[31] We also explained that the power of the Legislature to create a county attorney office cannot be doubted in light of Neb. Const. art. X, § 4, the predecessor to Neb. Const. art. IX, § 4.[32] We further emphasized that the "number and character of county offices that may be created rests in the discretion of the lawmaking body."[33] Thus, under the plain text of article IX, § 4, and our historic precedent of *Dinsmore*, the Legislature enjoys broad

---

[27] *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990), citing *Banks v. Board of Education of Chase County*, 202 Neb. 717, 277 N.W.2d 76 (1979).

[28] *Maggio v. Zeitz*, 333 U.S. 56, 62, 68 S. Ct. 401, 92 L. Ed. 476 (1948).

[29] *Dinsmore v. State*, 61 Neb. 418, 85 N.W. 445 (1901).

[30] *Id*.

[31] *Id*.

[32] *Id*.

[33] *Id*. at 429, 85 N.W. at 448.

discretion in creating and defining county offices, and deciding who is a county officer is a matter generally within the Legislature's authority.

[20] The 1866 Nebraska Constitution vested the state's legislative authority in the Legislature without any reservation to the people of either initiative or referendum, but made no reference to counties.[34] However, counties were seemingly already in existence prior to the 1866 constitution, pursuant to territorial law.[35] Then, in 1873, the Legislature exercised its legislative authority by confirming the boundaries of these existing counties and by creating others.[36] It also created legislation to provide for the government of these counties and defined the powers and duties of those counties and their respective officers.[37] Further, since 1866, the Legislature has, at will, added to the powers and duties of counties and occasionally taken away certain powers.[38] Moreover, the Legislature has previously exercised its power and authority to create subdivisions of government to perform special governmental functions on several occasions, such as sanitary districts,[39] rural fire protection districts,[40] airport authorities, and housing authorities.[41] Thus, it is clear that the power and authority to create counties and provide for county governance rests with the Legislature, which it has exercised long before the 1875 Nebraska Constitution was ratified. The case before us does not require that we articulate the outer boundaries of that discretion. Therefore, pursuant

---

[34] *Dwyer, supra* note 24.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] See *Whedon v. Wells*, 95 Neb. 517, 145 N.W. 1007 (1914).

[40] See *Seward County Rural Fire Protection Dist. v. County of Seward*, 156 Neb. 516, 56 N.W.2d 700 (1953).

[41] *Dwyer, supra* note 24.

to the plain text of article IX, § 4, our holding in *Dinsmore*, and the history of legislative authority in the state, we hold that the Legislature possesses the discretionary authority to create and define county offices, a power which includes the ability to define or identify who is a county officer.

## Election Commissioner and Chief Deputy Not County Officers

Following our conclusion that the Legislature wields the power and authority to create and define county offices and officers, we now turn to the merits of the case and discuss whether the Legislature has defined election commissioners and chief deputy election commissioners as county officers. The Attorney General argues election commissioners and chief deputy election commissioners are county officers because they are public officers who serve a specific county. In support of its argument, the Attorney General synthesizes case law from other jurisdictions and enunciates a list of indicia which, it argues, identifies who is a county officer. We disagree and decline to adopt the Attorney General's reasoning. Upon a review of the law and the record, it is apparent that the Legislature did not intend for election commissioners and deputy chief election commissioners to be recognized as county officers.

[21-24] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[42] An appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.[43] However, when interpretation is necessary, a court will look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served.[44] The court must then reasonably or liberally construe

---

[42] See, *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018); *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[43] See *Heiden, supra* note 42.

[44] *Id*.

the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.[45]

[25] In *Dwyer v. Omaha-Douglas Public Building Commission*,[46] this court heard a constitutional challenge to a statute authorizing certain cities and counties to establish a public building commission. In *Dwyer*, we emphasized that "[l]egislative construction of a statutory or constitutional provision, although not conclusive on the courts, when deliberately made is entitled to great weight."[47]

[26,27] Neb. Rev. Stat. §§ 23-1114.01 to 23-1114.07 (Reissue 2012) amount to what can be described as the Legislature's list of county officers. These sections list various county officers and their salaries, classified by county population size. These statutes classify positions such as the county clerk, treasurer, sheriff, attorney, appointive full-time veterans service officer, and clerk of the district court as county officers. However, these statutes make no mention of or reference to an election commissioner and a chief deputy election commissioner. Thus, because the intent of the Legislature may be found through its omission of words from a statute,[48] we find that through its omission of election commissioners and chief deputy election commissioners from the language contained in §§ 23-1114.01 to 23-1114.07, the Legislature did not intend for election commissioners or the chief deputies to be classified as county officers.[49] In fact, in § 32-217, the Legislature specifically identifies the election commissioner, the chief deputy election commissioner, and all employees of the office of the election commissioner as county employees. We view the statutory

---

[45] *Id*.

[46] *Dwyer, supra* note 24.

[47] *Id*. at 36, 195 N.W.2d at 241, citing *State ex rel. Johnson v. Chase*, 147 Neb. 758, 25 N.W.2d 1 (1946).

[48] See *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[49] See *id.*

scheme adopted by the Legislature as compelling evidence that if the Legislature had intended for election commissioners and the chief deputies to be county officers, the Legislature would have identified them as county officers.

Further, it is clear that the Legislature did not intend to make election commissioners county officers, as shown by the fact that the Legislature created separate and distinct processes for removing county officers and election commissioners. Neb. Rev. Stat. § 23-2001 (Reissue 2012) provides that all county officers may be removed from office for (1) habitual or willful neglect of duty, (2) extortion, (3) corruption, (4) willful maladministration in office, (5) conviction of a felony, (6) habitual drunkenness, or (7) official misconduct as defined in Neb. Rev. Stat. § 28-924 (Reissue 2016). Further, Neb. Rev. Stat. §§ 23-2001 to 23-2013 (Reissue 2012) provide that county officers are removed by judicial proceedings. On the other hand, § 32-214 provides that an election commissioner or a chief deputy shall be removed when (1) he or she has been derelict in the performance of the duties of the office; (2) he or she is incompetent; (3) his or her conduct is prejudicial to the public interest; (4) he or she has appointed incompetent, negligent, or corrupt precinct or district inspectors, judges of election, clerks of election, or deputy registrars; (5) a fair and impartial registration of voters was not obtained in any district of the county; or (6) the act was not enforced in the county. Further, § 32-214 provides that the Governor has the authority to remove the election commissioner or the chief deputy when either is subject to removal under the statute. If the Governor fails to do so, any citizen of the county may institute an action to order the Governor to remove the election commissioner or the chief deputy.

From the plain text of the Nebraska Revised Statutes, it is clear that the Legislature did not intend election commissioners and chief deputies to be considered county officers. The Legislature has the sovereign authority and prerogative to create and define county offices. As such, in light of article IX,

§ 4, we find that §§ 32-207 and 32-209 are constitutional. Accordingly, we conclude that the Attorney General's assignments of error are without merit.

## CONCLUSION

The restrictions imposed upon the Legislature by Neb. Const. art. IX, § 4, recognized a broad discretion to determine the necessity of choosing county and township officers by election. Here, the Legislature has determined that election commissioners and chief deputies are not county officers. Because its determination does not fall outside of that broad discretion, the judgment of the district court must be affirmed. The framers intended for the Legislature to hold this power. The Legislature has made it clear through its exercise of legislative authority, per the plain and unambiguous language of the Nebraska Revised Statutes, that it did not intend for election commissioners and chief deputies to be considered county officers. The Attorney General's arguments are without merit.

AFFIRMED.

Papik, J., not participating.