Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/04/2025 09:10 AM CDT

**M'Moupientila "Marc" N'Da and Dignity
Non-Emergency Medical Transportation, Inc.,
appellants and cross-appellees, v. Thomas Golden,
executive director of the Nebraska Public
Service Commission, et al., appellees
and cross-appellants.**

___ N.W.3d ___

Filed April 4, 2025.    No. S-23-945.

1. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.
2. **Constitutional Law: Statutes: Appeal and Error.** The constitutionality of a statute is a question of law, and the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court.
3. **Constitutional Law: Appeal and Error.** Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court.
4. **Declaratory Judgments: Justiciable Issues.** The function of declaratory relief is to determine a justiciable controversy that is either not yet ripe by conventional remedy or, for other reasons, is not conveniently amenable to usual remedies.
5. **Declaratory Judgments: Equity.** Declaratory and equitable relief are not appropriate where another equally serviceable remedy has been provided by law, and such relief is available only in the absence of a full, adequate, and serviceable remedy.
6. **Constitutional Law: Statutes.** A constitutional challenge may be made either as a facial challenge to the statute or as a challenge to the application of the statute to a specific person in a specific case.
7. **____: ____.** A facial challenge is a challenge to a statute, asserting that no valid application of the statute exists because it is unconstitutional

on its face. Generally, a facial challenge seeks to void the statute in all contexts for all parties.

8. **Constitutional Law: Statutes: Proof.** A plaintiff can succeed in a facial challenge only by establishing that no set of circumstances exists under which the act would be valid, i.e., that the law is unconstitutional in all of its applications.

9. **Constitutional Law: Statutes.** In contrast to a facial challenge, an as-applied challenge often concedes the statute is constitutional in some of its applications, but contends it is unconstitutional as applied to the particular facts of the case. An as-applied challenge does not seek to void the statute for all purposes but seeks only to prevent the statute's application to the facts before the court.

10. **Constitutional Law: Statutes: Presumptions: Proof.** A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. The party challenging the constitutionality of a statute bears the burden to clearly establish the unconstitutionality of a statutory provision.

11. **Constitutional Law: Statutes.** It is not the province of a court to annul a legislative act unless it clearly contravenes the constitution and no other resort remains.

12. **Constitutional Law: Due Process: Equal Protection.** The Nebraska Constitution's due process and equal protection clauses afford protections coextensive to those of the federal Constitution.

13. **Constitutional Law: Administrative Law: Due Process.** The applicable standard to review a due process challenge to an economic regulation is that when a fundamental right or suspect classification is not involved, an economic regulation is a valid exercise of police power if it is rationally related to a legitimate state interest.

14. **Special Legislation.** A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.

Appeal from the District Court for Lancaster County, Kevin R. McManaman, Judge. Affirmed in part, and in part vacated.

Perry A. Pirsch, of Pirsch Legal Services, P.C., L.L.O., and Andrew Ward, William Aronin, Joseph Gay, and Justin Pearson, of Institute for Justice, pro hac vice, for appellants.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Grant D. Strobl, for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ., and Bishop, Judge.

Miller-Lerman, J.

## NATURE OF CASE

Plaintiffs-appellants, M'Moupientila "Marc" N'Da and Dignity Non-Emergency Medical Transportation, Inc. (Dignity NEMT), appeal the order of the district court for Lancaster County in this declaratory action that rejected their constitutional challenge to the "public convenience and necessity" requirement of Neb. Rev. Stat. § 75-311(1)(b) and (3) (Cum. Supp. 2024). We determine that to the extent their constitutional challenge was a facial challenge, an action for declaratory relief was appropriate. Accordingly, we affirm the district court's order to the extent it rejected the facial challenge. However, we determine that to the extent the plaintiffs presented an as-applied challenge, such challenge would find an equally serviceable remedy in an appeal from a denial of an application under § 75-311, and that declaratory relief was not appropriate for an as-applied challenge in this case. Accordingly, we vacate the district court's order to the extent it ruled on an as-applied challenge to the public convenience and necessity requirement.

## STATEMENT OF FACTS

N'Da is the owner and president of Dignity NEMT. N'Da owns and operates various other entities that provide home health care and other services to elderly and disabled people. The entities provide, among such services, transportation for general purposes such as grocery shopping. However, the entities are not certified under state law to provide nonemergency medical transportation for purposes such as medical appointments and trips to the pharmacy.

N'Da observed that his clients frequently received inadequate service from certified providers of nonemergency medical transportation. He therefore formed Dignity NEMT in 2017 with the goal of providing more reliable service to his

clients. N'Da purchased specially equipped vehicles, obtained insurance, and contingently hired employees in preparation to provide the service. N'Da and Dignity NEMT applied to the Public Service Commission (PSC) to obtain a certificate as required by state law to provide nonemergency medical transportation.

When a common carrier seeks a certificate to provide non-emergency medical transportation services, the carrier must show under § 75-311(1)(a) that it is "fit, willing, and able properly to perform the service proposed" and under § 75-311(1)(b) that "the proposed service . . . is or will be required by the present or future public convenience and necessity." If the carrier seeks a designation of authority to provide nonemergency medical transportation services to Medicaid recipients pursuant to a contract with, inter alia, the Department of Health and Human Services (DHHS), the carrier must show under § 75-311(3) that such "authorization is or will be required by the present or future convenience and necessity to serve the distinct needs of medicaid clients." Although § 75-311(3) does not refer to "public" convenience and necessity, the requirements of both subsections (1)(b) and (3) are frequently referred to by the parties and herein as the "public convenience and necessity" requirement. This court has long stated that

> "[i]n determining public convenience and necessity, the deciding factors are (1) whether the operation will serve a useful purpose responsive to a public demand or need, (2) whether this purpose can or will be served as well by existing carriers, and (3) whether it can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest."

*Tymar v. Two Men and a Truck*, 282 Neb. 692, 695, 805 N.W.2d 648, 653 (2011) (quoting *In re Application of Nebraskaland Leasing & Assocs.*, 254 Neb. 583, 578 N.W.2d 28 (1998)). See, also, *In re Application of Moritz*, 153 Neb. 206, 43 N.W.2d 603 (1950).

When N'Da and Dignity NEMT filed their application to provide nonemergency medical transportation, four existing carriers that provide such service protested the application. After an administrative hearing, the PSC entered an order on April 24, 2018, denying the application. The PSC found under § 75-311(1)(a) that N'Da and Dignity NEMT were "fit, willing, and able properly to perform the service proposed." However, the PSC denied the application because it found under § 75-311(1)(b) and (3) that N'Da and Dignity NEMT had not shown that the proposed service was required by the present or future public convenience and necessity.

In its order, the PSC reviewed the factors set forth above regarding public convenience and necessity and found that N'Da and Dignity NEMT (1) did not produce sufficient evidence other than N'Da's own testimony regarding need, (2) presented no evidence indicating that existing carriers were failing to meet the needs of the market, and (3) did not offer evidence showing that N'Da and Dignity NEMT's entry into the market "would be harmless to other carriers." One commissioner dissented and found that N'Da's testimony sufficiently showed need and that the evidence did not show that the service proposed by N'Da and Dignity NEMT would harm existing carriers. With regard to the PSC's standard that imposes on N'Da and Dignity NEMT a burden to show no harm to existing carriers, we are not required to and do not in this opinion comment on the propriety of this standard.

N'Da and Dignity NEMT did not appeal the PSC's denial of the application. Instead, on April 22, 2020, N'Da and Dignity NEMT filed a complaint for declaratory and injunctive relief in the district court for Lancaster County, and the order entered in that action gives rise to this appeal. N'Da and Dignity NEMT named as defendants the PSC, DHHS, and various officials of each entity, including the executive director and commissioners of the PSC and the chief executive director of DHHS, all of whom were sued in their official capacities. N'Da and Dignity NEMT served the complaint on

the defendants and on the Nebraska Attorney General. The PSC and DHHS were later dismissed as defendants, and certain named officials were substituted with their successors in office before this matter was heard in the district court. The defendants were represented in the district court and in this appeal by the Attorney General's office. The defendants are hereinafter collectively referred to as "the State."

In the complaint, N'Da and Dignity NEMT generally alleged that the public convenience and necessity requirement found in § 75-311(1)(b) and (3) was unconstitutional. They stated that they "agree[d] that the PSC followed the relevant Nebraska statutes and regulations" and that they were "merely challenging the unconstitutional trade barrier created by the 'public convenience and necessity' requirement found in" § 75-311(1)(b) and (3). They alleged that the district court had jurisdiction over their claims and could grant the declaratory and injunctive relief requested.

N'Da and Dignity NEMT alleged that the public convenience and necessity requirement of § 75-311(1)(b) and (3) violated three provisions of the Nebraska Constitution: the due process clause of Neb. Const. art. I, § 3; the special legislation clause of Neb. Const. art. III, § 18; and the special privileges and immunities clause of Neb. Const. art. I, § 16. N'Da and Dignity NEMT made no challenge based on the federal Constitution. They alleged that the public convenience and necessity requirement was "facially unconstitutional" and "unconstitutional as applied to" them.

Regarding the impact of the existing nonemergency medical transportation companies, N'Da and Dignity NEMT alleged in the complaint that the PSC's application of the public convenience and necessity requirement "effectively affords the existing non-emergency medical transportation companies the ability to determine whether new companies are allowed to compete with them." They alleged that under relevant statutes and regulations, existing nonemergency medical transportation companies are given notice of applications and may

oppose any application, and that existing companies typically object to applications from potential new competitors. They further alleged that when there were no objections, the PSC typically granted an application without a hearing, but that when existing companies objected, the PSC typically did not grant the application. N'Da and Dignity NEMT alleged that their application was denied because of the public convenience and necessity requirement and the objection of existing nonemergency medical transportation companies.

N'Da and Dignity NEMT alleged that the public convenience and necessity requirement protected existing nonemergency medical transportation companies from competition and that it harmed the public in various respects, including by diminishing the quality of service provided to patients, the elderly, and the disabled. They further alleged that the public convenience and necessity requirement did not advance any legitimate state interest and that it did not promote public health, safety, or welfare, which were protected by "numerous [other] health and safety provisions."

Regarding the due process claim, N'Da and Dignity NEMT alleged that application of the public convenience and necessity requirement to protect existing nonemergency medical transportation companies was not a constitutionally legitimate basis for prohibiting applicants from operating a nonemergency medical transportation company, which they alleged was their legal right. Regarding the special legislation claim, N'Da and Dignity NEMT alleged that protecting existing companies and allowing them to veto new entrants into the market through application of the public convenience and necessity requirement created an arbitrary and unreasonable classification between companies, bestowed economic favors on a preferred group or class, and created a permanently closed class. Regarding the special privileges and immunities claim, N'Da and Dignity NEMT alleged that the public convenience and necessity requirement granted existing

companies governmental protection from competition and the privilege to determine whether others would be allowed to compete with them.

As relief, N'Da and Dignity NEMT sought (1) a declaratory judgment that § 75-311(1)(b) and (3) violate Neb. Const. art. III, § 18, and its prohibition on special legislation; (2) a declaratory judgment that § 75-311(1)(b) and (3) violate Neb. Const. art. I, § 3, and its guarantee of due process of law; (3) a declaratory judgment that § 75-311(1)(b) and (3) violate Neb. Const. art. I, § 16, and its prohibition on granting special privileges or immunities; (4) an order permanently enjoining the State from enforcing the public convenience and necessity requirement of § 75-311(1)(b) and (3) "in any manner"; (5) an order permanently enjoining the State from enforcing the public convenience and necessity requirement of § 75-311(1)(b) and (3) as applied to N'Da and Dignity NEMT; and (6) other appropriate relief, including but not limited to nominal damages, reasonable costs, and attorney fees. In response to the State's motion to dismiss, in addition to dismissing the PSC and DHHS as defendants, the district court dismissed N'Da and Dignity NEMT's claim for nominal damages. The matter proceeded to trial on the remaining claims against the remaining defendants.

The district court conducted a bench trial in January 2023 at which it took evidence and heard testimony and arguments. N'Da testified regarding, inter alia, his experience in applying for certification under § 75-311 and other observations regarding how the PSC generally applies the public convenience and necessity requirement. Other witnesses presented by N'Da and Dignity NEMT included the general counsel for the PSC, an administrator of DHHS Medicaid programs, a DHHS employee who had worked with nonemergency medical transportation programs, and a former commissioner of the PSC. N'Da and Dignity NEMT also offered numerous exhibits into evidence. The State did not present its own witnesses, but it cross-examined N'Da and Dignity NEMT's witnesses.

Following the trial, the district court filed an order on October 24, 2023, in which it rejected N'Da and Dignity NEMT's constitutional challenges and dismissed their complaint. In its analysis, the district court first addressed an argument raised by the State that a declaratory judgment action was not appropriate because N'Da and Dignity NEMT had an equally serviceable remedy. The State relied on the proposition that declaratory and equitable relief are not appropriate where another equally serviceable remedy has been provided by law, and such relief is available only in the absence of a full, adequate, and serviceable remedy. See *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024). The State argued that N'Da and Dignity NEMT had an equally serviceable remedy in that they could again apply for certification to provide nonemergency public transportation and could challenge the constitutionality of the public convenience and necessity requirement in an administrative appeal if the PSC again denied their application. The district court cited *In re Application of Nebraskaland Leasing & Assocs.*, 254 Neb. 583, 590, 578 N.W.2d 28, 33, 34 (1998), a case involving an application to the PSC for a certificate of public convenience and necessity pursuant to § 75-311, in which this court determined that the applicant could not in that action "challenge the constitutionality of §§ 75-301 through 75-322," reasoning that such challenge was "precluded by the rule that a litigant who invokes the provisions of a statute may not challenge its validity nor seek the benefit of such statute and in the same action and at the same time question its constitutionality." The court determined that because N'Da and Dignity NEMT "would not be able to challenge the constitutionality [of the public convenience and necessity requirement] on appeal from reapplication, there is no equally serviceable remedy, and this declaratory judgment is therefore proper."

Regarding N'Da and Dignity NEMT's due process claim under Neb. Const. art. I, § 3, the district court first addressed the level of scrutiny and the argument of N'Da and Dignity

NEMT that the public convenience and necessity requirement should be "scrutinized by the courts under a heightened legal standard, the real and substantial test, applicable when economic interests are being regulated." In contrast, the court noted the State had argued that the "'rational basis'" test rather than the "'real and substantial'" test was the proper level of scrutiny of the substantive due process claim.

The court reviewed various precedents of this court involving due process claims. In particular, the court cited *Malone v. City of Omaha*, 294 Neb. 516, 533, 883 N.W.2d 320, 333 (2016), in which the plaintiff challenged a municipal ordinance on various bases, including that it violated "his constitutional right to conduct a lawful business." In *Malone*, we stated that the "test of validity [of a regulatory statute affecting such right] is the existence of a real and substantial relationship between the exercise of the police power and the public health, safety, and welfare." 294 Neb. at 533, 883 N.W.2d at 333. We reasoned that the plaintiff had "a constitutional right to conduct a lawful business," but that "so long as the regulation . . . bears a reasonable relationship to the public health, safety, and welfare, the regulation of that right is permissible." *Id*. at 533, 883 N.W.2d at 334. We concluded in *Malone* that the ordinance at issue bore a reasonable relationship to the public's health, safety, and welfare.

The district court in this case recognized "an apparent conflation of terminology" in *Malone*, but it ultimately agreed with the State that "the use of the phrase 'real and substantial' [in *Malone*] did not signal the use of heightened scrutiny under substantive due process for economic interests" and that instead, this court in *Malone* ultimately applied a rational basis test. The court further cited precedent of this court, including *Keller v. City of Fremont*, 280 Neb. 788, 791, 790 N.W.2d 711, 713 (2010), for the proposition that this court has "interpreted the Nebraska Constitution's due process and equal protection clauses to afford protections coextensive to those of the federal Constitution."

The district court rejected N'Da and Dignity NEMT's argument that "a heightened due process standard . . . called the 'real and substantial' test" applied in cases such as the present involving the economic right to conduct a business, and it stated that N'Da and Dignity NEMT's argument was "a call to return to a standard of scrutiny that retains no current support in Nebraska law." The court stated instead that the standard was that set forth in cases such as *Connelly v. City of Omaha*, 284 Neb. 131, 148, 816 N.W.2d 742, 758 (2012), in which we stated, "'When a fundamental right or suspect classification is not involved in the legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate state interest.'"

The district court then analyzed N'Da and Dignity NEMT's due process claim under what it described as "rational-basis scrutiny." The court stated that existing providers of nonemergency medical transportation "have no inherent right to be protected from new competition," but that such determination "does not end the analysis under the rational basis test." The court found that the public convenience and necessity requirement "appears at least rationally related to health and welfare in that it seeks to prevent 'destructive competition' to the market delivering medical transportation" to Nebraska patients, including Medicaid patients. The court cited the PSC's counsel's testimony referring to the "'destructive competition'" rationale. The court stated that the public convenience and necessity requirement "could conceivably tend to avoid or reduce destructive competition of current . . . providers after they have sunk resources into serving medical (including Medicaid) patients" and that the requirement "can be used to promote access to service by preventing destructive competition to existing services."

Based on its determination that due process under the Nebraska Constitution is coextensive with that under the federal Constitution, the district court reviewed various federal cases analyzing federal due process challenges to what

it found to be regulations similar in effect to the public convenience and necessity requirement. The court generally distinguished between regulation that was "purely protectionist" and that which serves some public good. Applying the precedent it reviewed, the court concluded that N'Da and Dignity NEMT had not met their burden to clearly establish the unconstitutionality of the public convenience and necessity requirement. The court determined instead that the evidence showed that the requirement "promotes sufficient, safe, and reliable transportation," and it agreed with the State's argument that the requirement had a legitimate state interest "'in protecting its passengers by ensuring the . . . marketplace does not become oversaturated to the point that no providers are able to service [a] vulnerable population in an efficient and cost-effective manner.'" The court concluded that N'Da and Dignity NEMT had not shown that the public convenience and necessity requirement "is unconstitutional under rational-basis scrutiny."

Regarding N'Da and Dignity NEMT's special legislation claim under Neb. Const. art. III, § 18, the district court stated that "the threshold question in special legislation analysis asks whether the challenged legislative act confers any special rights or benefits on a select class." The court rejected the challenge, finding that the public convenience and necessity requirement of § 75-311(1)(b) and (3) did not create an arbitrary or unreasonable classification and that it did not create a closed class. Regarding an arbitrary or unreasonable classification, the court referred to its finding in its due process analysis that the State had a legitimate interest in regulating nonemergency transportation services through the public convenience and necessity requirement "to avoid ruinous or destructive competition that it believes is harmful to the public interest, including those often-vulnerable Medicaid recipients" who use such services. The court determined that the public convenience and necessity requirement served a

legitimate state interest and that "the State's methodology is neither arbitrary nor unreasonable." The court further found that the public convenience and necessity requirement did not create a closed class and that instead, "it sets standards all individuals and entities must meet." The court further found that the requirement "creates opportunities for the numbers in the class to increase," and the court noted evidence that since 2015, the PSC had granted applications for new carriers and had "expanded its [nonemergency medical transportation] carriers when they are necessary to serve the public." The court rejected N'Da and Dignity NEMT's special legislation challenge.

Regarding N'Da and Dignity NEMT's special privileges and immunities claim under Neb. Const. art. I, § 16, the district court observed that challenges under the clause were "seldom brought." The court stated that the evidence in this case showed that the public convenience and necessity requirement was "intended to promote access to sufficient, affordable, reliable medical transportation, . . . thereby promoting the health and welfare of the citizens of Nebraska using Medicaid." The court further stated that the purpose of the requirement was "promotion of the public interest in the market not becoming oversaturated to the point where no transportation providers can continue to provide services, rather than granting a benefit to private transportation providers." The court also noted similarity between the special privileges and immunities clause of Neb. Const. art. I, § 16, and the Privileges and Immunities Clause of the U.S. Constitution. Based on these considerations, the court rejected N'Da and Dignity NEMT's special privileges and immunities claim.

Having rejected each of N'Da and Dignity NEMT's constitutional challenges to § 75-311(1)(b) and (3), the district court dismissed their complaint with prejudice.

N'Da and Dignity NEMT appeal the district court's order, and the State cross-appeals.

## ASSIGNMENTS OF ERROR

In their appeal, N'Da and Dignity NEMT claim that the district court erred when it (1) applied a "rational-basis test" rather than a "real-and-substantial test" to their due process challenge, (2) rejected their due process challenge, (3) rejected their special legislation challenge, and (4) rejected their special privileges and immunities challenge.

In its cross-appeal, the State claims that the district court erred when it rejected the State's argument that this action for declaratory and injunctive relief was not appropriate because N'Da and Dignity NEMT had an equally serviceable remedy by applying for a certificate and appealing an order of the PSC denying their application for a certificate of public convenience and necessity.

## STANDARDS OF REVIEW

[1] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question. *Adams v. State Board of Parole*, 293 Neb. 612, 879 N.W.2d 18 (2016).

[2,3] The constitutionality of a statute is a question of law, and this court is obligated to reach a conclusion independent of the decision reached by the trial court. *State ex rel. Peterson v. Shively*, 310 Neb. 1, 963 N.W.2d 508 (2021). Constitutional interpretation is a question of law on which this court is obligated to reach a conclusion independent of the decision by the trial court. *Id*.

## ANALYSIS

*Declaratory Judgment: Was Declaratory and
Injunctive Relief Appropriate or Was an
Equally Serviceable Remedy Available?*

We first address the State's cross-appeal and its claim that this action for declaratory and injunctive relief was not appropriate because N'Da and Dignity NEMT had an equally serviceable remedy in an appeal from the denial of a certificate

under § 75-311. As set forth below, we determine that to the extent N'Da and Dignity NEMT's constitutional challenge to the public convenience and necessity requirement of § 75-311(1)(b) and (3) is a facial challenge to the statutes, a declaratory judgment action is appropriate, but to the extent their challenge is an as-applied challenge, an appeal from a denial of their application in the PSC would be an equally serviceable remedy and the as-applied challenge was not appropriate in this declaratory judgment action.

[4,5] The function of declaratory relief is to determine a justiciable controversy that is either not yet ripe by conventional remedy or, for other reasons, is not conveniently amenable to usual remedies. *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 948 N.W.2d 244 (2020). We have held that a declaratory judgment will generally not lie where another equally serviceable remedy is available. *Id*. We have stated that declaratory and equitable relief are not appropriate where another equally serviceable remedy has been provided by law, and such relief is available only in the absence of a full, adequate, and serviceable remedy. *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024). The appropriateness of a declaratory judgment is ascertained by the precise relief sought. *Id*.

After the PSC denied their application pursuant to § 75-311(1)(b) and (3), N'Da and Dignity NEMT did not appeal the denial by the PSC, and they instead filed the present declaratory judgment action to declare unconstitutional the public convenience and necessity requirement of § 75-311(1)(b) and (3). As noted above, the State claims on cross-appeal that a declaratory judgment action was not appropriate in this case because an equally serviceable remedy was available to N'Da and Dignity NEMT. The State contends that they could have appealed from the original denial or that they could apply again to the PSC and then appeal if the new application is denied. The State argues that N'Da and Dignity NEMT could challenge the constitutionality of § 75-311(1)(b) and (3) in an administrative appeal from a denial by the PSC.

The district court addressed and rejected the State's argument. The court cited *In re Application of Nebraskaland Leasing & Assocs.*, 254 Neb. 583, 590, 578 N.W.2d 28, 33 (1998), a case involving an application to the PSC for a certificate of public convenience and necessity pursuant to § 75-311, in which this court determined that the applicant could not in that action "challenge the constitutionality of §§ 75-301 through 75-322," reasoning that such challenge was "precluded by the rule that a litigant who invokes the provisions of a statute may not challenge its validity nor seek the benefit of such statute and in the same action and at the same time question its constitutionality." The court determined that because N'Da and Dignity NEMT "would not be able to challenge the constitutionality [of the public convenience and necessity requirement] on appeal from reapplication, there is no equally serviceable remedy, and this declaratory judgment is therefore proper."

The State argues in its cross-appeal that the district court misread *In re Application of Nebraskaland Leasing & Assocs*. The State focuses on a portion of the reasoning in that case to the effect that there was an "inconsistency in the positions taken by" the applicant before the PSC and those taken on appeal to a court. *Id*. at 590, 578 N.W.2d at 33. The State contends that N'Da and Dignity NEMT could apply for a certificate under § 75-311 but also assert that the public convenience and necessity requirement is unconstitutional and therefore effectively not seek a public convenience and necessity determination. Under this scenario, the State argues that if N'Da and Dignity NEMT appealed to a court and presented a constitutional challenge to the appellate court, they would be proceeding without taking an inconsistent position. In this regard, we are aware of *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990), wherein a partial permit was granted and the appealing complaining objectors assigned as error that Neb. Rev. Stat. § 46-2,115(1) (Reissue 1988) was unconstitutional.

We read *In re Application of Nebraskaland Leasing & Assocs.* differently. We read the relevant inconsistency as being an inconsistency in the relief sought. That is, it is inconsistent for one to seek to gain the benefit of a statute and at the same time seek to have the statute declared unconstitutional. That is, one cannot have a statute declared unconstitutional and still expect to gain the benefit of the statute. By example, in this case, N'Da and Dignity NEMT could not have § 75-311(1)(b) and (3) declared unconstitutional and also gain the benefit of certification and authorization under § 75-311(1)(b) and (3). Under our precedent, if they were successful in having § 75-311(1)(b) and (3) declared unconstitutional, they could not also be granted certification and authorization under those statutory provisions.

Based on this understanding, we take this opportunity to clarify the scope of the proposition that a litigant who invokes the provisions of a statute may not challenge its validity or seek the benefit of such statute and in the same action and at the same time question its constitutionality. We do not appear to have previously determined whether the proposition is equally applicable whether the constitutional challenge is a facial challenge to the statute or an as-applied challenge to the way the statute was applied to a specific person or group of persons. As discussed below, we conclude that the proposition is applicable to a facial challenge but not to an as-applied challenge, because the two types of constitutional challenges have different goals and require different considerations.

[6-8] A constitutional challenge may be made either as a facial challenge to the statute or as a challenge to the application of the statute to a specific person in a specific case. *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024). We have described a facial challenge as a challenge to a statute, asserting that no valid application of the statute exists because it is unconstitutional on its face. *Id*. Generally, a facial challenge seeks to void the statute in all contexts for all parties. *Id*. A plaintiff can succeed in a facial challenge only by establishing

that no set of circumstances exists under which the act would be valid, i.e., that the law is unconstitutional in all of its applications. See *State v. Jones*, 317 Neb. 559, 10 N.W.3d 747 (2024). The U.S. Supreme Court has stated that a facial challenge to a legislative act is the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which that act would be valid. *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

[9] A facial challenge stands in contrast to a challenge to an ordinance or statute "as applied" to the individual. See *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). In contrast to a facial challenge, an as-applied challenge often concedes the statute is constitutional in some of its applications, but contends it is unconstitutional as applied to the particular facts of the case. *State v. Zitterkopf, supra*. An as-applied challenge does not seek to void the statute for all purposes but seeks only to prevent the statute's application to the facts before the court. *Id*.

With this understanding of the differing goals of facial and as-applied challenges, the proposition that one cannot seek the benefit of a statute and in the same action and at the same time question the statute's constitutionality clearly applies when one makes a facial challenge to the challenge, because in a facial challenge, one seeks to have the statute invalidated in all its circumstances and therefore declared unconstitutional. One cannot successfully have a statute declared unconstitutional but still gain the benefit that the statute provides. By contrast, in an as-applied challenge, one does not seek to have the statute declared unconstitutional and invalid for all purposes. Instead, one argues that it is unconstitutional to apply an otherwise constitutional statute in a certain way under a certain set of circumstances. Thus, one could argue that it would be unconstitutional to apply the statute in a certain way, specifically in a way that would deny that person the benefit of the statute. But it would not necessarily be inconsistent for one

to seek the benefit of a statute and simultaneously argue that it would be unconstitutional to apply the statute in a way that denied one the benefit of the statute.

We therefore hold that the proposition stated in *In re Application of Nebraskaland Leasing & Assocs.*, 254 Neb. 583, 578 N.W.2d 28 (1998), and other cases to the effect that a litigant who invokes the provisions of a statute may not challenge its validity or seek the benefit of such statute and in the same action and at the same time question its constitutionality is relevant when the litigant makes a facial challenge to the statute. However, the proposition is not relevant when a litigant raises an as-applied challenge to the way a statute is applied to a specific person or group of persons but does not seek to have the statute declared unconstitutional on its face.

Based on this understanding, we read *In re Application of Nebraskaland Leasing & Assocs.* to mean that one cannot seek certification or authorization under § 75-311 and related statutes and in that proceeding also make a facial challenge seeking a declaration that the statutory scheme in whole or in part is unconstitutional and invalid. However, one can seek certification or authorization under the statutory scheme while arguing that it would be unconstitutional to apply the otherwise constitutional statute in a certain way.

With this understanding of *In re Application of Nebraskaland Leasing & Assocs.* and of the distinction between facial and as-applied challenges, we determine as relevant to the instant case that N'Da and Dignity NEMT could raise an as-applied challenge in a proceeding before the PSC seeking certification or authorization under § 75-311, but that they could not raise a facial challenge to the public convenience and necessity requirement under § 75-311(1)(b) and (3) in that same proceeding. That is, N'Da and Dignity NEMT could preserve their as-applied challenge before the PSC and, if unsuccessful in obtaining certification, pursue their as-applied challenge in the review before a court with authority to rule on such challenge. This is not to say that the PSC would have authority to

decide the constitutional challenge; rather, the constitutional challenge can be decided only by a court authorized to do so. Thus, N'Da and Dignity NEMT would have an equally serviceable remedy to raise an as-applied challenge in a proceeding seeking certification or authorization under § 75-311, but such proceeding would not provide an equally serviceable remedy to raise a facial challenge to the public convenience and necessity requirement under § 75-311(1)(b) and (3). Consequently, declaratory relief would not be appropriate for an as-applied challenge, which would have an equally serviceable remedy in a proceeding seeking a certificate before the PSC, but declaratory relief would be appropriate for a facial challenge, which would not have an equally serviceable remedy in a proceeding before the PSC. See *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024).

In their complaint for declaratory judgment, N'Da and Dignity NEMT stated that they were making both a facial challenge and an as-applied challenge to the public convenience and necessity requirement under § 75-311(1)(b) and (3). The relief they requested included declaratory judgments that the public convenience and necessity requirement violated certain constitutional provisions. They also sought orders permanently enjoining the State from enforcing the requirement "in any manner," which relief would indicate a facial challenge, and from enforcing the requirement "as applied to" N'Da and Dignity NEMT, which relief would indicate an as-applied challenge.

Regardless of how the parties label a constitutional challenge, a court will classify the challenge based upon the nature of the alleged constitutional defect. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). In its order, the district court did not characterize the constitutional challenge as facial, as applied, or both, and in their briefs on appeal, the parties do not make such a distinction.

As we read N'Da and Dignity NEMT's arguments, some arguments appear directed to an as-applied challenge to the

way the PSC has applied the statutory public convenience and necessity requirement to them and to other new applicants. N'Da and Dignity NEMT largely argue that the public convenience and necessity requirement is unconstitutional because it excessively protects existing carriers and denies new carriers the ability to engage in the business of providing nonemergency medical transportation. But that argument is largely an argument regarding the way the public convenience and necessity requirement has been applied to them and to other carriers who seek a new certification and authority. In a facial challenge, however, our focus is on the statutory language requiring a showing of "public convenience and necessity" in § 75-311(1)(b) or "present or future convenience and necessity" in § 75-311(3) and on whether there is at least some application of that language that does not violate the Constitution.

To the extent N'Da and Dignity NEMT made a facial challenge, it was appropriate in this declaratory judgment action. However, to the extent they made an as-applied challenge, it was not appropriate in this declaratory judgment action and instead would be more appropriately raised in an application for a certificate to the PSC and an appeal from any denial of that application. We will not consider the district court's ruling to the extent it ruled on an as-applied challenge. In this appeal, we will review the district court's order as it pertains to constitutionality only to the extent it ruled on a facial challenge to the statutory requirement.

Related to this issue, we note that the State argues that the district court lacked jurisdiction to consider N'Da and Dignity NEMT's petition for declaratory relief, that N'Da and Dignity NEMT lacked standing to bring a declaratory judgment action, and that N'Da and Dignity NEMT's claims are not ripe. These arguments generally rely on the State's contention on cross-appeal that declaratory relief is not appropriate and that instead, N'Da and Dignity NEMT should have raised their constitutional challenges in a proceeding to apply for certification and authorization under § 75-311(1)(b) and

(3). To the extent the constitutional challenges are facial challenges, we reject these arguments on the same basis upon which we rejected the State's argument on cross-appeal and determined that declaratory judgment is appropriate for a facial challenge. We need not consider these arguments as relevant to an as-applied challenge, because we determined that an as-applied challenge is not appropriate or suitable for our review in this declaratory judgment action.

*Standards Regarding Facial Challenges.*

We proceed to consider N'Da and Dignity NEMT's specific constitutional challenges. N'Da and Dignity NEMT challenged the constitutionality of the public convenience and necessity requirement of § 75-311(1)(b) and (3) based on three separate provisions of the Nebraska Constitution. All the challenges are based solely on the Nebraska Constitution and not on the federal Constitution. As discussed above, we consider the constitutional challenges only as facial challenges, not as-applied challenges. The following standards apply to all the facial constitutional challenges in this case.

[10,11] A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. *State ex rel. Peterson v. Shively*, 310 Neb. 1, 963 N.W.2d 508 (2021). The party challenging the constitutionality of a statute bears the burden to clearly establish the unconstitutionality of a statutory provision. *Id*. It is not the province of a court to annul a legislative act unless it clearly contravenes the constitution and no other resort remains. *Id*. A plaintiff can succeed in a facial challenge only by establishing that no set of circumstances exists under which the act would be valid, i.e., that the law is unconstitutional in all of its applications. See *State v. Jones*, 317 Neb. 559, 10 N.W.3d 747 (2024).

*Due Process Challenge: Generally.*

N'Da and Dignity NEMT's first constitutional challenge to the public convenience and necessity requirement of § 75-311(1)(b) and (3) is based on the due process clause of

Neb. Const. art. I, § 3, which provides, "No person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws." N'Da and Dignity NEMT claim that the district court erred when it (1) applied the wrong standard to review their due process challenge and (2) rejected their challenge based on that standard.

*Due Process Challenge:*
*Applicable Standard to Review.*

As part of their first assignment of error, N'Da and Dignity NEMT claim the district court erred when it reviewed their due process claim under a rational basis test rather than a "real and substantial" test. They generally argue that the court ignored "Nebraska's long history of protecting the common-law right to earn a living by applying the real-and-substantial test" when reviewing economic regulations. Brief for appellants at 23. We determine that our analysis of substantive due process claims, including challenges to statutes imposing economic regulations, under the Nebraska Constitution is coextensive with analysis under the federal Due Process Clause. We further determine that the appropriate standard in this case is whether the statute at issue is rationally related to a legitimate state interest.

N'Da and Dignity NEMT rely on a line of cases dating to the early 1900s in which this court applied a "real and substantial" test when reviewing regulation of economic interests. The district court noted a history of the U.S. Supreme Court's applying a heightened standard to economic regulations in the context of federal due process analysis from approximately 1905 until the 1930s but, after that time and until the present, applying a rational basis review. The Nebraska cases relied on by N'Da and Dignity NEMT indicate that this court applied the heightened standard until approximately the 1970s or 1980s. However, the district court correctly determined that the more recent trend has been for this court, following the lead of the federal courts, to apply a rational basis standard in due process cases.

[12] In *Keller v. City of Fremont*, 280 Neb. 788, 791, 790 N.W.2d 711, 713 (2010), we stated that "[w]e have interpreted the Nebraska Constitution's due process and equal protection clauses to afford protections coextensive to those of the federal Constitution." For that proposition in *Keller*, we relied on due process cases including *Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist.*, 274 Neb. 278, 739 N.W.2d 742 (2007), and *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). In *Citizens for Eq. Ed.*, we stated that the language of the Nebraska due process clause was "similar to the Due Process Clause of the federal Constitution, which provides both procedural and substantive protections." 274 Neb. at 293, 739 N.W.2d at 756. We further stated that "the Due Process Clauses of both the federal and the state Constitutions forbid the government from infringing upon a fundamental liberty interest, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest," *id*., but that "when a fundamental right or suspect classification is not involved . . . a government act is a valid exercise of police power if it is rationally related to a legitimate governmental purpose," *id*. at 293-94, 739 N.W.2d at 756-57. In *Hamit*, we "extend[ed] the foregoing principle of congruence to the present context involving a parent's substantive due process rights, and accordingly, we do not distinguish between the two constitutions in our analysis." 271 Neb. at 672, 715 N.W.2d at 524. See, also, *Scofield v. State*, 276 Neb. 215, 753 N.W.2d 345 (2008) (analyzing substantive due process claim, stating that due process requirements of Nebraska's Constitution are similar to those of federal Constitution, and therefore applying same analysis to state and federal constitutional substantive due process claims).

After *Keller*, in *Connelly v. City of Omaha*, 284 Neb. 131, 148, 816 N.W.2d 742, 758 (2012), we again noted the similarity of the Nebraska and federal Due Process Clauses and stated that in a substantive due process challenge, "'[w]hen a fundamental right or suspect classification is not involved

in the legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate state interest.'"

N'Da and Dignity NEMT cite *Malone v. City of Omaha*, 294 Neb. 516, 883 N.W.2d 320 (2016), which postdates these cases and which, they contend, indicates that we still apply a heightened standard in substantive due process claims involving economic regulation. We do not agree with this contention. We note that in *Malone*, we did not explicitly identify the constitutional challenge as a due process claim under either the federal or the Nebraska Constitution. Instead, we described the constitutional challenge at issue and the standards applicable thereto as follows:

The liberty to contract, the right to acquire and sell property in a lawful manner, and the right to conduct lawful business are constitutionally protected rights. A regulatory statute adopted by virtue of the police power which has no reasonable relation to the public health, safety, and welfare is invalid. The test of validity, then, is the existence of a real and substantial relationship between the exercise of the police power and the public health, safety, and welfare. A statute under the guise of a police regulation, which does not tend to preserve the public health, safety, and welfare, is an unconstitutional invasion of the personal and property rights of the individual.

*Malone*, 294 Neb. at 533, 883 N.W.2d at 333-34. N'Da and Dignity NEMT emphasize the "real and substantial relationship" language.

The district court recognized an "apparent conflation of terminology" in this paragraph of *Malone*, but it determined that *Malone* did not signal the use of a heightened standard for economic regulation, because this court ultimately applied a rational basis test. We agree that in *Malone*, we ultimately applied a rational basis test when we concluded that the ordinance at issue "bears a reasonable relationship to the public's health, safety, and welfare." 294 Neb. at 534, 883 N.W.2d at 334.

[13] We further determine that our general holding that the Nebraska Constitution's due process and equal protection clauses afford protections coextensive to those of the federal Constitution extends specifically to a substantive due process challenge to an economic regulation. Therefore, the applicable standard to review a due process challenge to an economic regulation, such as that at issue in this case, is that when a fundamental right or suspect classification is not involved, an economic regulation is a valid exercise of police power if it is rationally related to a legitimate state interest. When applying this general standard to economic regulations, advancing the public's health, safety, and welfare is a legitimate state interest. We reject N'Da and Dignity NEMT's first assignment of error as it pertains to the proper standard of review.

*Due Process Challenge: Rational Basis*
*Review of Facial Challenge.*

N'Da and Dignity NEMT's second assignment of error is that the district court erred when it determined that the public convenience and necessity requirement of § 75-311(1)(b) and (3) does not violate the due process clause. We apply a rational basis test as set forth above, and we keep in mind that we are reviewing only the facial challenge. We conclude that the public convenience and necessity requirement is rationally related to a legitimate state interest in providing reliable and stable transportation services to the public and that therefore, the district court did not err when it rejected N'Da and Dignity NEMT's due process challenge.

We have recognized that one of the liberties protected by the federal Constitution's Due Process Clause is the individual's right to engage in """"any of the common occupations of life."'"" *Potter v. Board of Regents*, 287 Neb. 732, 741, 844 N.W.2d 741, 751 (2014) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). We have also recognized a "constitutionally protected" right to "conduct lawful business." *Malone v. City of Omaha*, 294 Neb. 516, 533, 883 N.W.2d 320, 333 (2016). We determine that a

substantive due process right to engage in an occupation or to conduct a business is at issue in this case because the public convenience and necessity requirement and § 75-311 generally regulate whether carriers may provide nonemergency medical transportation services and, in § 75-311(3), whether carriers are authorized to provide such services to Medicaid recipients under the specified programs. The protected right is not a fundamental right, and therefore, the regulation at issue is subject to rational basis review.

The district court applied rational basis review in this case, and it generally found that the public convenience and necessity requirement was rationally related to a legitimate state interest in preventing destructive competition among providers of nonemergency transportation services. This formulation of the legitimate state interest is focused on the argument by N'Da and Dignity NEMT that the public convenience and necessity requirement serves to protect existing carriers by restricting the entry of new applicants into the relevant markets. This argument, however, seems more directed to the way the public convenience and necessity requirement has been applied by the PSC to them and to other new applicants. Because our review is limited to the facial challenge and does not resolve the as-applied challenge, we focus on the "convenience and necessity" statutory language of § 75-311(1)(b) and (3), rather than the manner in which it has been applied in this case and other cases.

By focusing on the statutory language, we find a more general legitimate state interest in a public convenience and necessity requirement that focuses on protecting the members of the public who rely on the relevant transportation services. The public convenience and necessity requirement appears to focus on ensuring that reliable transportation is being provided by qualified carriers and that there is a public need for new carriers. The public convenience and necessity requirement is rationally related to ensuring reliable transportation services to the public and to Medicaid recipients specifically,

because an oversaturation of carriers in the market beyond the saturation required by public convenience and necessity could threaten the stability and reliability of the services provided.

The district court reviewed various federal cases involving similar requirements. Among these cases was *Tiwari v. Friedlander*, 26 F.4th 355 (6th Cir. 2022), which we find particularly instructive in certain aspects of our rational basis review of the public convenience and necessity requirement. Generally, *Tiwari* involved a due process challenge under the federal Constitution to a Kentucky law that required applicants seeking a license for providing home health care services to obtain a certificate of need by demonstrating a public need for such services. The Sixth Circuit Court of Appeals determined that those challenging the regulation "may invoke the Fourteenth Amendment to target laws that impose substantive restrictions on individual liberty, including the right to engage in a chosen occupation," *Tiwari*, 26 F.4th at 360, but that the "threshold for invalidating a state law on this basis is high" because such "[e]conomic regulations, even those affecting an individual's liberty to work in a given area," are subject to rational basis review, *id*. at 361. The Sixth Circuit further recognized that "rational-basis review epitomizes a light judicial touch"; that if a regulation passes such review, "the law must stand, no matter how unfair, unjust, or unwise the judges may see it as citizens"; and that "a law may be incorrigibly foolish but constitutional." *Id*. at 361.

A large part of N'Da and Dignity NEMT's argument in this case is that the public convenience and necessity requirement has the effect of protecting existing providers at the expense of new providers who wish to enter the market to provide nonemergency medical transportation. The Sixth Circuit in *Tiwari* addressed such an argument regarding laws that protect existing providers. It stated that "[a] law that serves protectionist ends and nothing else . . . does not satisfy rational-basis review," *id*. at 367-68, and that "a law defended on protectionist grounds alone—denying individuals a right to ply their

trade solely to protect incumbents—would not satisfy rational-basis review," *id*. at 368. But the Sixth Circuit recognized that courts sometimes uphold laws that have an element of protectionism and that "they tend to do so on the ground that a public interest (other than protectionism or a wealth transfer for its own sake) supports the law." *Id*. at 368. Regarding the Kentucky law regulating health care that was at issue in *Tiwari*, the Sixth Circuit stated, "Protectionist though this law may be in some of its effects, that is not the only effect it has or the only goal it serves," and "[i]n the intensely regulated market of healthcare, Kentucky has shown that its regulations potentially advance a legitimate cause" thereby providing a rational basis for the regulation. 26 F.4th at 368.

The Sixth Circuit addressed a specific "protectionist feature of the law" at issue in that the challengers "argue[d] that the law favors incumbents over new entrants" and "would allow a sharp-elbowed incumbent theoretically to expand . . . , forever prohibiting a start up from obtaining permission to enter the market." *Id*. But the Sixth Circuit determined that "a rational basis, even if a debatable one, supports the discrepancy" and that the "disparity comports with the law's justifications, or at least a legislator plausibly could think so." *Id*.

To the extent our review is limited to a facial challenge to the public convenience and necessity requirement, we determine that the statutory language does not inherently implicate unacceptable protectionist concerns. The statutory language requiring a showing of public convenience and necessity focuses on protecting the public need for reliable transportation services. Such requirement can be applied in a manner that focuses on the public interest rather than the private interest of existing carriers. In a facial challenge, it must be shown that there is no constitutional application of the law, and we determine that was not shown here.

In this regard, we note that this court has long stated that "[i]n determining public convenience and necessity, the deciding factors are (1) whether the operation will serve

a useful purpose responsive to a public demand or need,
(2) whether this purpose can or will be served as well by
existing carriers, and (3) whether it can be served by the
applicant in a specified manner without endangering or
impairing the operations of existing carriers contrary to
the public interest."

*Tymar v. Two Men and a Truck*, 282 Neb. 692, 695, 805 N.W.2d
648, 653 (2011) (quoting *In re Application of Nebraskaland
Leasing & Assocs.*, 254 Neb. 583, 578 N.W.2d 28 (1998)). See,
also, *In re Application of Moritz*, 153 Neb. 206, 43 N.W.2d 603
(1950). While this formulation of the public convenience and
necessity requirement entails some consideration of interests
of existing carriers and whether operations of existing carriers
may be impaired by new carriers, we read these considerations
as being within the greater context of considerations regarding
the public interest. That is, the interests of existing carriers
must be considered in the context of whether negative effects
to existing carriers will negatively affect the public need for
reliable transportation services. The ultimate consideration is
not how existing carriers will be affected but how the public
interest will be affected.

To the extent the public convenience and necessity require-
ment could be applied in a manner that emphasizes the pro-
tection of existing carriers over the public interest in provid-
ing reliable transportation, we think that such a challenge is
more properly characterized as an as-applied challenge. An
as-applied challenge asserting that the PSC has applied the
public convenience and necessity requirement in a manner that
emphasizes the private interest in protecting existing carriers
over the public interest would more properly be addressed
in a proceeding before the PSC for certification and autho-
rization under § 75-311(1)(b) and (3), and an appeal from a
denial by the PSC of certification and authorization. Such a
proceeding would inherently provide better information and
evidence regarding how the public convenience and necessity

requirement is being applied to a specific carrier or to new carriers generally.

We conclude that the statutory public convenience and necessity requirement of § 75-311(1)(b) and (3) is rationally related to a legitimate state interest in ensuring reliable non-emergency medical transportation services to the public and specifically to Medicaid recipients. We therefore affirm the district court's order to the extent it rejected N'Da and Dignity NEMT's facial challenge to the public convenience and necessity requirement based on the due process clause of Neb. Const. art. I, § 3, and reject N'Da and Dignity NEMT's first assignment of error that claims to the contrary.

*Special Legislation Challenge.*

N'Da and Dignity NEMT's second constitutional challenge to the public convenience and necessity requirement of § 75-311(1)(b) and (3) is based on Neb. Const. art. III, § 18, which provides that "[t]he Legislature shall not pass local or special laws in any of the following cases," including "[g]ranting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever." They claim that the district court erred when it held that the public convenience and necessity requirement did not violate the special legislation clause. We reject this assignment of error.

[14] A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class. *REO Enters. v. Village of Dorchester*, 312 Neb. 792, 981 N.W.2d 254 (2022). In this appeal, N'Da and Dignity NEMT state that they are not invoking the aspect of the special legislation clause regarding permanently closed classes, and they do not challenge the district court's finding that the public convenience and necessity requirement does not create a closed class.

N'Da and Dignity NEMT instead argue that the public convenience and necessity requirement creates an arbitrary and unreasonable method of classification. They cite *J.M. v.*

*Hobbs*, 288 Neb. 546, 558, 849 N.W.2d 480, 489 (2014), for the proposition that under special legislation analysis, "legislative classifications must be real and not illusive" and "cannot be based on distinctions without a substantial difference." They also note that we have stated that "[t]he test of validity under the special legislation prohibition is more stringent than the traditional rational basis test." *Haman v. Marsh*, 237 Neb. 699, 713, 467 N.W.2d 836, 846-47 (1991). They argue that the district court erroneously applied a rational basis test.

In its special legislation analysis, the district court referred to its due process analysis and its finding that the public convenience and necessity requirement was related to the legitimate governmental interest in regulating nonemergency transportation services. Despite this seeming reference to a rational basis test, we agree with the district court's ultimate determination that the public convenience and necessity requirement did not create an arbitrary and unreasonable classification.

We have stated that "special legislation analysis focuses on a legislative body's purpose in creating a challenged class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation" and that "[t]he prohibition aims to prevent legislation that arbitrarily benefits a special class." *J.M. v. Hobbs*, 288 Neb. at 557, 849 N.W.2d at 489. We emphasize again that in this appeal, we review the district court's order only to the extent it ruled on a facial challenge and not to the extent it ruled on an as-applied challenge. We therefore focus on the statutory language rather than the manner in which statutory language might have been applied to a specific applicant or group of applicants. In that respect, there is nothing on the face of the statutory public convenience and necessity requirement of § 75-311(1)(b) and (3) that makes an arbitrary and unreasonable classification. The statutory language does not arbitrarily benefit a specific class, and instead, it sets forth a standard requirement that must be shown by any applicant. The requirement itself represents a "substantial difference of circumstances to suggest

the expediency of" the classification between those applicants who can show public convenience and necessity and those who cannot. See *J.M.*, 288 Neb. at 557, 849 N.W.2d at 489.

We determine that the classification made by the requirement is real and not illusive, that the classification is not based on distinctions without a substantial difference, and that therefore, the statutory public convenience and necessity requirement is not arbitrary or unreasonable and does not violate the special legislation clause. We affirm the district court's order to the extent it rejected N'Da and Dignity NEMT's facial challenge to the public convenience and necessity requirement based on the special legislation clause of Neb. Const. art. III, § 18. We reject this assignment of error.

*Special Privileges and Immunities Challenge.*

N'Da and Dignity NEMT's third constitutional challenge to the public convenience and necessity requirement of § 75-311(1)(b) and (3) is based on Neb. Const. art. I, § 16, which provides in relevant part, "No . . . law . . . making any irrevocable grant of special privileges or immunities shall be passed." N'Da and Dignity NEMT claim that the district court erred when it determined that the public convenience and necessity requirement did not violate the special privileges and immunities clause. We reject this assignment of error.

We note as an initial matter the district court stated that this court has construed other constitutional provisions as coextensive with related provisions of the federal Constitution and that it therefore reviewed case law related to the "Privileges or Immunities Clause" of U.S. Const. amend. XIV, § 1, which provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." We find this portion of the district court's analysis to be misguided. The focus of the federal clause is to prohibit government abridgment of citizens' "privileges or immunities," whereas the focus of Neb. Const. art. I, § 16, is designed to prohibit the government from "making any irrevocable grant of special privileges or immunities." Because the federal and

the Nebraska provisions have different purposes, we disavow any suggestion that the provisions are coextensive.

The district court stated, and the parties appear to agree, that a challenge under Neb. Const. art. I, § 16, is "seldom brought." As a result, there is little precedent applying the special privileges and immunities clause. The district court cited *State ex rel. Meyer v. Knutson*, 178 Neb. 375, 379, 133 N.W.2d 577, 581 (1965), for the proposition that

> [S]tatutes which are reasonably designed to protect the health, morals, and general welfare do not violate the Constitution where the statute operates uniformly on all within a class which is reasonable. This is so even if the statute grants special or exclusive privileges where the primary purpose of the grant is not the private benefit of the grantees but the promotion of the public interest.

The district court also cited *Yant v. City of Grand Island*, 279 Neb. 935, 943, 784 N.W.2d 101, 108 (2010), for the proposition that "incidental benefits do not render a statute unconstitutional when enacted for a public purpose." However, these cases do not appear to involve challenges under Neb. Const. art. I, § 16. The quote from *Yant* appears to be related to the special legislation clause of Neb. Const. art. III, § 18, and *Knutson* speaks of constitutionality generally without specifying the constitutional provision at issue. Unlike the district court, we do not find these cases helpful.

N'Da and Dignity NEMT cite *Nelsen v. Tilley*, 137 Neb. 327, 334, 289 N.W. 388, 393 (1939), in which this court found part of a statute regulating car dealerships unconstitutional because "[t]he effect would be that the business of selling new cars would be monopolized by dealers enfranchised by the manufacturers." N'Da and Dignity NEMT argue that the public convenience and necessity requirement similarly allows existing carriers to monopolize the provision of nonemergency medical transportation services. Although Neb. Const. art. I, § 16, was mentioned in *Nelsen*, it was one of several constitutional provisions cited, and it is not clear

how the proposition specifically relates to the special privileges and immunities clause. N'Da and Dignity NEMT also refer to *Finocchiaro, Inc. v. Nebraska Liq. Cont. Comm.*, 217 Neb. 487, 351 N.W.2d 701 (1984), which cites *Nelsen*, but the constitutional challenge in *Finocchiaro, Inc.*, was made under Neb. Const. art. I, §§ 3 and 25, and not Neb. Const. art. I, § 16.

The State in its brief for the appellees asserts that in *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006), this court suggested that the standard for the special privileges and immunities clause of Neb. Const. art. I, § 16, is identical to the standard for the special legislation clause of Neb. Const. art. III, § 18. The State also argues that, based solely on the language of Neb. Const. art. I, § 16, the public convenience and necessity requirement § 75-311(1)(b) and (3) does not violate the clause because it does not create an "'irrevocable'" grant of special privileges or immunities, because any certificate issued under the statute may be revoked. Brief for appellees at 55.

We determine that, as the State argues, the statutory public convenience and necessity requirement does not violate the plain language of the special privileges and immunities clause because it does not create any privileges or immunities that are irrevocable. We further note the district court found that the public convenience and necessity requirement was related to promoting the health and welfare of the citizens of Nebraska and that "its purpose is promotion of the public interest . . . rather than granting a benefit to private transportation providers." Because the requirement is focused on the public interest rather than granting a benefit to private persons or entities, we find it does not grant "special" privileges or immunities prohibited under Neb. Const. art. I, § 16.

We note again that our review is limited to the facial challenge. We determine that the statutory language requiring a finding of public convenience and necessity does not violate the special privileges and immunities clause. Our review does

not consider whether the way in which the public convenience and necessity requirement has been applied in a specific case or group of cases violates the constitutional requirement by, for example, emphasizing private privileges or immunities over the public interest.

We affirm the district court's order to the extent it rejected a facial challenge to the public convenience and necessity requirement based on the special privileges and immunities clause of Neb. Const. art. I, § 16. We reject this assignment of error that claims to the contrary.

## CONCLUSION

We determine that this declaratory judgment action was appropriate to the extent N'Da and Dignity NEMT raised facial challenges to the public convenience and necessity requirement of § 75-311(1)(b) and (3). We further determine that the district court did not err when it rejected each of N'Da and Dignity NEMT's facial challenges. However, to the extent their challenges were as-applied challenges, we determine that there is an equally serviceable remedy by raising an as-applied challenge in an application for certification and authorization under § 75-311(1)(b) and (3) and an appeal from a denial of such application. Based on this determination, declaratory and equitable relief with respect to the as-applied challenge was not appropriate and rulings thereon should be vacated. In summary, we vacate the district court's order to the extent it ruled on as-applied challenges and affirm the district court's order to the extent it rejected N'Da and Dignity NEMT's facial challenges.

AFFIRMED IN PART, AND IN PART VACATED.

PAPIK, J., concurring.

M'Moupientila "Marc" N'Da wishes to provide nonemergency medical transportation in the State of Nebraska through his company Dignity Non-Emergency Medical Transportation, Inc. Under Nebraska law, however, one cannot start providing such transportation without first getting a certificate from

the Nebraska Public Service Commission (PSC). One of the factors the PSC is directed to consider in deciding whether to grant such a certificate is whether the proposed service is required by "public convenience and necessity." Neb. Rev. Stat. § 75-311(1)(b) (Cum. Supp. 2024). Having been turned away by the PSC once on the ground that he could not satisfy the public convenience and necessity requirement, N'Da did not appeal, but instead initiated this action. He challenges the public convenience and necessity requirement on constitutional grounds and seeks an order that would preclude the PSC from considering it in processing a future application he would file.

I agree with the majority opinion's conclusion that N'Da is not entitled to the order he seeks in this action. I agree with the majority's analysis that N'Da has not shown that the public convenience and necessity requirement is facially unconstitutional. And to the extent N'Da also asserts that the way the PSC applied the public convenience and necessity requirement to him was unconstitutional, it is my view he is making an impermissible collateral attack on the PSC's earlier denial of his application for a certificate. See *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004).

Despite all that, I write separately in this case to emphasize that our determination that N'Da is not entitled to relief in this case should not be understood as an expression of approval of the PSC's decision to deny N'Da a certificate. Indeed, after reviewing this case, I have concerns about whether the public convenience and necessity requirement is being correctly applied in the nonemergency medical transportation context.

*Facial Challenge.*

Before discussing my concerns with the application of the public convenience and necessity requirement, I wish to comment briefly on N'Da's facial due process challenge to that requirement. For reasons stated in the majority opinion, I agree that, under this court's recent cases, such a challenge is

subject to a rational basis review and our analysis is properly focused on the statutory language as opposed to the way that language has been applied.

As the majority opinion explains, a law passes rational basis review if the law is rationally related to a legitimate state interest, a relatively lenient standard. In this case, the State defended the public convenience and necessity requirement set forth in § 75-311 by arguing that it serves the interest of preventing "destructive competition." Brief for appellees at 46. Because a law "defended on protectionist grounds alone . . . would not satisfy rational-basis review," *Tiwari v. Friedlander*, 26 F.4th 355, 368 (6th Cir. 2022), the State could not successfully defend the law on the ground that it prevents "destructive competition" if that referred solely to keeping new entrants to the market from harming the bottom lines of incumbent providers. Accordingly, as I understand the State's position, "destructive competition" refers to a hypothesis that if an aspiring provider of nonemergency medical transportation like N'Da enters the market when there is not a need for additional providers, the new entrant might drive existing providers out of business such that, in the end, there would not be enough providers to serve consumers.

In all honesty, I question whether the "destructive competition" scenario envisioned by the State would ever come to pass. Even assuming that the entry of new competitors might prompt some incumbent providers to leave the market, I do not understand why that would result in a gap in service that no one is willing to fill. More broadly, I am also not sure I understand why there is a need to prevent so-called "destructive competition" in the market for nonemergency medical transportation when consumers' needs are met in so many other markets without government officials being responsible for achieving some optimal level of service. Finally, the State's rationale seems to ignore that market competition might actually result in an improvement in the quality and cost of service provided to users of nonemergency medical

transportation. See, e.g., *Tiwari*, 26 F.4th at 366 ("we again do not balk at the general notion that increased competition usually improves quality of care and lowers prices").

But some judicial misgivings about a law are not enough to invalidate it under rational basis due process review. See *Tiwari*, *supra*. The question is whether there is a plausible reason for the law. And, while I have qualms about the State's claim that the public convenience and necessity requirement guards against "destructive competition," I agree with the majority opinion that we are not in a position to say that it is so implausible that it fails rational basis review.

*Public Convenience and Necessity Requirement.*

But even if the 14th Amendment does not prohibit Nebraska from empowering the PSC to determine whether public convenience and necessity justify allowing someone like N'Da to enter the market for nonemergency medical transportation, I have concerns about the way this statute is being applied. As the majority opinion notes, this court has set forth factors to consider in determining whether a proposed service is required by public convenience and necessity. Those factors are

> (1) whether the operation will serve a useful purpose responsive to a public demand or need, (2) whether this purpose can or will be served as well by existing carriers, and (3) whether it can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to the public interest.

*Tymar v. Two Men and a Truck*, 282 Neb. 692, 695, 805 N.W.2d 648, 653 (2011) (internal quotation marks omitted). As I will explain, it appears to me that the PSC may have expanded those factors to the benefit of existing providers and additionally that the factors themselves may be due for reconsideration.

The PSC's order denying N'Da's application is part of the record in this case. In that order, the PSC set forth various

reasons for denying the application. Among them was that N'Da had not "offer[ed] any evidence showing [his] entry [to the market for nonemergency medical transportation services] would be harmless to other carriers." To the extent the PSC is requiring applicants for a certificate of public convenience and necessity to show that their entry to the market would be harmless to other carriers, the basis for such a requirement is not clear to me. The third factor set forth above does require the PSC to consider whether a new entrant to the market would "*endanger*[] or *impair*[] the operations of existing carriers *contrary to the public interest*." *Id.* (emphasis supplied). This factor, as it has been articulated by this court, calls to mind the State's rationale that the public convenience and necessity requirement prevents "destructive competition." In my view, however, there are miles of distance between, on the one hand, considering whether a new entrant might so upset the market of nonemergency medical transportation service such that existing carriers would eliminate operations and thereby harm the public and, on the other hand, requiring new applicants to show that their entry would not in any way harm the business of existing providers. This court has appeared to countenance consideration of the former; I am not sure where the latter comes from. On top of that, it is difficult to understand how new applicants would ever, as a practical matter, prove that their entry to the market would be harmless to existing providers, especially if the existing providers claim otherwise.

The PSC also faulted N'Da for not providing evidence that existing carriers would be unable to meet the needs of consumers in the nonemergency medical transportation market. On this point, I acknowledge that the second factor articulated by this court for determining public convenience and necessity does appear to call for a consideration of whether existing carriers could provide the service the applicant seeks to provide. I have doubts, however, about whether it is consistent with a public convenience and necessity requirement for the PSC to deny an applicant a certificate on the ground

that existing providers could provide the services the applicant seeks to provide.

Many states require those wishing to serve as common carriers of various types to make a showing of public convenience and necessity before being permitted to operate. A number of courts from those states, however, have rejected the notion that an applicant cannot establish that its proposed operation is consistent with public convenience and necessity merely because existing providers would be willing to provide additional service. In *Martorelli v. Department of Transp.*, 316 Conn. 538, 114 A.3d 912 (2015), the Connecticut Supreme Court considered the meaning of "public convenience and necessity" for purposes of a statute regulating livery service. It concluded that such language required a consideration of benefits to the public and not just existing permittees.

In *Martorelli*, the Connecticut Supreme Court approvingly cited *Blanton's Package, Etc. v. Pony Exp. Courier*, 219 Va. 280, 247 S.E.2d 397 (1978), a Virginia Supreme Court opinion involving a statute that required those wishing to be restricted parcel carriers to demonstrate that the proposed service was justified by public convenience and necessity. In *Blanton's Package, Etc.*, the Virginia Supreme Court emphasized that the "'paramount consideration'" in judging public convenience and necessity was "the effect certification of a new carrier will have upon the [p]ublic, *not the effect it will have upon existing carriers*." 219 Va. at 285, 247 S.E.2d at 400 (emphasis supplied). The court acknowledged that public convenience and necessity might entail a consideration of the prospect of "ruinous competition" that would be "so disabling" of existing carriers "as to disserve the public interest," but rejected the idea that new applicants could be denied entry merely because existing carriers were willing to serve an identified need. *Id.* "To so hold," the court explained, would be to "equate the vested economic interests of certificated carriers with the necessity and convenience of the public." *Id.* at 285, 286, 247 S.E.2d at 400.

The Utah Supreme Court has also rejected the argument that common carriers can be denied a public convenience and necessity certificate merely because incumbent carriers provide an adequate service and can expand to meet growing demands. *Milne Truck Lines v. Public Service Com'n*, 720 P.2d 1373, 1376 (Utah 1986) ("[i]t is decidedly not the law that established motor common carriers should be protected by the Commission from new competition as long as they provide a reasonably adequate service and can meet growing demands for common carrier service"). The Utah Supreme Court explained that in considering public convenience and necessity, its public service commission's duty was "to protect the public interest, not the entrenched rights of the industry it is charged with regulating." *Id.* at 1377. It also noted that competition "'is almost always an affirmative factor in furthering the public convenience and necessity,'" *id*. at 1376, and that "the beneficial effect of competition on service and rates, notwithstanding an adverse impact on existing carriers, should be recognized in determining whether the public interest requires new authority," *id*. at 1377.

Each of the opinions summarized above was interpreting and applying public convenience and necessity requirements similar to that found in § 75-311. These opinions make a persuasive argument that a public convenience and necessity requirement does not permit the denial of a certificate to a new applicant just because existing providers would be willing to provide the same service. To the extent our decisions have held otherwise, I believe they may be due for reconsideration.

Given the foregoing, it should not come as a great surprise that it is quite difficult for those applying to provide nonemergency medical transportation to obtain a certificate from the PSC if incumbent providers object. In the district court's order in this matter, it detailed that in cases since 2015 in which incumbent providers have protested the application of a would-be provider of nonemergency medical transportation, only one new applicant has received a certificate. At the same time,

however, the district court summarized evidence offered at hearings on unsuccessful applications that showed that incumbent providers were often late in providing rides or canceled rides altogether. If incumbent providers truly are frequently late or canceling rides, and yet, new applications are consistently denied, this too raises questions about whether the public convenience and necessity requirement (with the emphasis on the word "*public*") is being correctly applied.

*Conclusion.*

In sum, while I agree with the majority that the public convenience and necessity requirement is not facially unconstitutional, I am unsure that requirement is being correctly applied. That said, the question of whether the applications of N'Da and other applicants should have been approved is not before us in this case. While N'Da could have appealed the PSC's denial of his application and received a de novo on the record review by an appellate court, see Neb. Rev. Stat. § 75-136 (Reissue 2018) and *In re App. No. P-12.32 of Black Hills Neb. Gas*, 311 Neb. 813, 976 N.W.2d 152 (2022), he apparently chose not to do so. Whether the PSC was correct to deny certificates to other applicants is also obviously not before us in this appeal.

But while this case does not present us with an opportunity to decide whether the PSC is correctly applying the public convenience and necessity requirement, I am hopeful this court will consider the issues raised in this concurring opinion should a future opportunity arise.

Funke, C.J., joins in this concurrence.